WALTER J. ROTHSCHILD, Judge.
|2On July 28, 2010, the St. Charles Parish District Attorney filed a bill of information charging defendant, Samuel Reed, with two counts of attempted second degree murder, in violation of LSA-R.S. 14:27 and 14:30.1. Defendant pled not guilty. On December 14 and 15, 2010, the case was tried before a 12-person jury, and defendant was found guilty as charged. On March 1, 2011, the trial judge sentenced defendant to imprisonment for ten years in the Department of Corrections without benefit of parole, probation, or suspension of sentence.

FACTS

At trial, Richard Kestle testified that on June 14, 2010, he was at 312 Almedia Plantation Road in St. Rose where he lived with his daughter and his wife, Christine Loupe. Also at the residence visiting that evening were Michael Kestle, who is Richard’s nephew, Cynthia Harrington, who was Michael’s girlfriend, Mona Kestle, who is Michael’s mother and Richard’s sister, and Allan Tinoco, who was Mona’s longtime boyfriend. At approximately 7:30 or 8:00 IsP-ni., defendant, James Yawn, and defendant’s wife arrived at the residence in a truck. Defendant had been a longtime friend of the Kestle family. Michael walked outside, and he and Yawn had an argument while Yawn was sitting in the truck regarding rumors Yawn had allegedly spread about Michael’s mother.
According to Richard, defendant got out of the truck and hit Michael on the back of his head. Defendant and Michael started fighting, and Yawn jumped out of the truck. A fistfight ensued among defendant, Michael, Yawn, and Tinoco. Richard subsequently broke up the fight, and defendant got back into the truck. At some point, Tinoco told defendant and Yawn to leave. Richard testified that defendant paused, and then pulled out a gun. Defendant’s wife, who was in the driver’s seat, yelled, “Shoot him, shoot him.”
Richard testified that defendant pointed the gun out of the window and aimed it at Mona’s chest. He then turned and shot Michael and Tinoco, who were standing approximately fifteen and five feet away, respectively. Tinoco was shot in his right arm and right hip, and Michael was shot in his left leg. Afterward, defendant, Yawn, and defendant’s wife left. Michael Kestle, Mona Kestle, Allan Tinoco, and Christine Loupe also testified at trial, and their testimony was similar to Richard’s testimony.
Detective Ben Schmitt of the St. Charles Parish Sheriffs Office testified that he was the lead investigator in the case. A couple of hours after the shooting, he stopped defendant and advised him of his rights. After waiving them, defendant gave a statement. Defendant said that he went with Yawn to Richard’s house, because Richard owed defendant some money. He also claimed that Richard asked him to bring Yawn there to set Yawn up, because of the comments Yawn had made about Michael’s mother. Richard and a few other men were waiting to fight with Yawn. Defendant and Michael started fighting, and then other people started |4fighting. Defendant claimed that someone yelled, “Go get a gun.” He saw an AK-47 assault rifle, but he did not know who had it, and then he heard three shots. Defendant and Yawn got into the vehicle and left.
*604 In his statement, defendant said that when he and Yawn got out of the truck when they first arrived, he was beaten up with baseball bats and “God knows what else.” He initially denied shooting a gun. However, defendant later admitted that he had a gun and shot it one time into the air or “that way” to try and scare them off. He later said he did not know how many times he fired his weapon.
Detective Schmitt, Lieutenant Rodney Madere, and Detective Derek Pertuis all testified that defendant’s injuries were consistent with a fistfight and inconsistent with being beaten by a bat.
James Yawn testified at trial for the defense. He stated that he and defendant went to Richard’s house, because Richard called defendant to say he had the money he owed defendant. When they arrived, defendant got out of the truck and started walking, and Michael came over and told Yawn to get out of the truck. Defendant then turned around and came back and told Michael to get away from the truck. Yawn did not see defendant strike Michael on the back of the head. Afterward, Yawn saw Tinoco and others beat defendant and hit him with a bat.
Yawn tried to help defendant by punching someone, but then Michael hit Yawn with a baseball bat across his back and on the side of his head. He identified State’s Exhibit 13 as the red and black bat Michael used. Yawn went back to the truck, and he saw defendant crawling on his hands and knees toward the truck. He claimed that Tinoco was standing over defendant, hitting defendant with a silver bat, and telling defendant he was going to kill him. Yawn identified State’s Exhibit 12 as being close in color to the bat Tinoco had.
IsAfterward, Yawn heard Michael yell, “Go get the gun.” He then saw Richard standing in the yard by the fence with an assault rifle in his hand. Yawn heard three shots and thought Richard was shooting at defendant and Yawn. Defendant then jumped in the truck and they left. Yawn claimed that defendant was beaten pretty badly, and that defendant had lumps on his nose, the side of his eye, and the side of his head, and black and blue eyes. Yawn denied that defendant extended his arm out of the window and fired shots. He testified that he heard shots while defendant was still trying to get into the truck, and that he did not know where the shots came from; however, he said he was not saying that defendant did not fire shots. Yawn also testified that he never heard defendant’s wife say, “Shoot them.” Yawn admitted that he pled guilty in this case to aggravated battery, but explained that he did not do anything wrong and only pled guilty because he wanted to go home. On cross-examination, Yawn admitted that defendant told him he shot a gun during the incident.
The State’s witnesses responded that the altercation was a fistfight, and that no one used baseball bats or any other weapons during the fistfight, other than the gun defendant pulled out after the fistfight had ended. Richard testified that the baseball bats found in the trailer, State’s Exhibits 12 and 18, were his daughter’s softball bats, and they were at his residence on the day in question, but were not used during the incident. Richard denied ever owning an AX-47 assault rifle. He also denied that he owed defendant money or that he told defendant to come over so he could repay money he owed defendant.

DISCUSSION

On appeal, defendant argues that the evidence was insufficient to support the verdict. He contends that the State failed to prove beyond a reasonable doubt that the shootings were not done in self- *605 defense, noting that he was a passenger in a Rvehicle that was aggressively attacked by the Kestles, and that he reasonably believed his life and the lives of others were in danger. Defendant also asserts that the State only proved, at best, that the shootings were attempted manslaughter done in the heat of passion, and not attempted second degree murder.
In reviewing the sufficiency of evidence, an appellate court must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
In cases involving circumstantial evidence, the trial court must instruct the jury that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” LSA-R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83; State v. Washington, 03-1135, p. 4 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 977.
Defendant was convicted of two counts of attempted second degree murder, in violation of LSA-R.S. 14:27 and 14:30.1. Second degree murder is the killing of a human being when the offender has a spe-eific intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1 A(l). Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly |7toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. LSA-R.S. 14:27. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1).
To prove attempted second degree murder, the State must establish, beyond a reasonable doubt, that the defendant specifically intended to kill a human being and that he committed an overt act in furtherance of that goal. State v. Hebert, 05-1004, p. 9 (La.App. 5 Cir. 4/25/06), 930 So.2d 1039, 1046. Specific intent to inflict great bodily harm is sufficient to support a murder conviction, but attempted second degree murder requires a specific intent to kill. Id., 05-1004 at 9, 930 So.2d at 1046-47. Specific intent to kill may be inferred from a defendant’s act of pointing a gun and firing at a person. State v. Hoffman, 98-3118, p. 48 (La.4/11/00), 768 So.2d 542, 585, cert. denied, 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (2000); State v. Batiste, 06-869, p. 6 (La.App. 5 Cir. 4/11/07), 958 So.2d 24, 27. Specific intent to kill may also be inferred from the extent and severity of the victim’s injuries. State v. Stacker, 02-768 (La.App. 5 Cir. 12/30/02), 836 So.2d 601, 606, writ denied, 03-411 (La.10/10/03), 855 So.2d 327.
In the instant case, the State’s witnesses indicated that defendant started the fistfight. Several of them testified that while *606 Michael and Yawn were engaged in a verbal argument, defendant came over and struck Michael on the back of the head, thereby escalating the verbal argument into a physical altercation. Afterward, a fistfight ensued among defendant, Michael, Yawn, and Tinoco. According to the State’s witnesses, when the fist-fighting ended, defendant and Yawn got back into the truck. At that point, the State’s witnesses thought the fight was over. IsHowever, they maintained that defendant then paused for either a few minutes or a few seconds, that defendant’s wife yelled “Shoot him” or “Shoot them,” and that defendant then pulled out a gun, aimed it, and shot Tinoco, who was standing approximately five feet away, and Michael, who was standing approximately fifteen feet away.
Defendant’s specific intent to kill the victims can be inferred from the fact that defendant deliberately pointed a gun at the victims and fired it. Also, several of the State’s witnesses testified that defendant shot the gun three or four times, and the evidence shows that the two victims collectively sustained a total of three gunshot wounds. Based on the foregoing, the evidence was sufficient to show that defendant had the specific intent to kill the two victims.
Defendant contends that he established by a preponderance of the evidence the presence of “sudden passion” and “heat of blood” entitling him to attempted manslaughter verdicts. He claims that he was provoked by the Kestles, which was sufficient to deprive the average person of self-control and cool reflection.
Under LSA-R.S. 14:31 A(l), manslaughter is a first or second degree murder that is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed. LSA-R.S. 14:31 A(l). “Sudden passion” and “heat of blood” are not elements of the offense of manslaughter; rather, they are mitigatory factors which may reduce the grade of the offense. State v. Johnson, 01-1362 (La.App. 5 Cir. 5/29/02), 820 So.2d 604, 610, writ denied, 02-2200 (La.3/14/03), 839 So.2d 32. In order to be entitled to | sthe lesser verdict of manslaughter, the defendant is required to prove the mitigatory factors by a preponderance of the evidence. Id.
The record shows that defendant did not meet his burden of proving that he acted in “sudden passion” or “heat of blood.” The State’s evidence reflects that after the fistfight ended, defendant deliberately entered the truck, paused either a few minutes or a few seconds, and after his wife yelled “Shoot him” or “Shoot them,” pulled out his gun, aimed it at the two victims, and fired it three or four times. The State’s evidence shows that defendant was not being attacked just prior to or at the time of the shootings, and that an average person’s blood would have cooled between the time the fistfight ended and the time defendant shot the victims. Viewing the evidence in the light most favorable to the prosecution, the jury could have reasonably found that the mitigatory factors were not established by a preponderance of the evidence.
Lastly, defendant argues that his actions were justified because they were committed in self-defense and defense of others. The fact that an offender’s conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that con *607 duct. LSA-R.S. 14:18. The use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense. LSA-R.S. 14:19 A. The aggressor or the person who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. LSA-R.S. 14:21. It is justifiable to use force or violence or to kill in the defense of another person when it is reasonably apparent that the person attacked could have justifiably used such 110means himself, and when it is reasonably believed that such intervention is necessary to protect the other person. LSA-R.S. 14:22.
When self-defense or the defense of another is claimed by the defendant in a homicide case, the State has the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense or in defense of another. State v. Rainey, 98-436, p. 12 (La.App. 5 Cir. 11/25/98), 722 So.2d 1097, 1103, writ denied, 98-3219 (La.5/7/99), 741 So.2d 28. However, in non-homicide cases, this Court has stated that the defendant has the burden of proof by a preponderance of the evidence that his actions were in self-defense or in defense of others. See State v. Nailor, 10-1062 (La.App. 5 Cir. 11/15/11), 78 So.3d 816, 821; State v. Steele, 01-1414 (La.App. 5 Cir. 9/30/02), 829 So.2d 541, 547, writ denied, 02-2992 (La.9/19/03), 853 So.2d 632, and State v. Barnes, 491 So.2d 42, 47 (La.App. 5 Cir.1986).
In the instant case, the testimony of the State’s witnesses revealed that at the time defendant fired his weapon, he was safely inside his truck, the two victims were standing still outside of the truck and not moving, defendant was not being attacked at the time, and the victims were not armed. These facts do not indicate that it was necessary for defendant to defend himself or others. As such, the evidence did not show that defendant’s action were in self-defense or defense of others.
By returning the guilty verdicts, the jury obviously rejected defendant’s account of the events and found that defendant’s actions were neither reasonable nor apparently necessary. It is the role of the fact-finder to weigh the credibility of the witnesses, and a reviewing court will not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State v. Wallace, 00-1745 (La.App. 5 Cir. 5/16/01), 11788 So.2d 578, 584, writ denied, 01-1849 (La.5/24/02), 816 So.2d 297. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that defendant had the requisite intent to support his convictions for attempted second degree murder, that defendant failed to carry the burden necessary to reduce the convictions to attempted manslaughter, and that defendant did not act in self-defense or defense of others.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990). Our review reveals one error.
Although defendant was convicted of two counts of attempted second degree murder, the trial judge imposed only one ten-year sentence. Generally, the failure to impose a sentence for each count is considered an error patent. State v. Hebert, 02-1252 (La.App. 5 Cir. 4/8/03), *608 846 So.2d 60, 66. An exception to this general rule was recognized in State v. Batiste, 517 So.2d 371, 373 (La.App. 5 Cir. 1987), where this Court upheld a single sentence for convictions on multiple counts. This Court held that:
[w]hen the sentences for a conviction on each count would more appropriately be concurrent rather than consecutive, and the term of imprisonment is a reasonable sentence under the circumstances, the single sentence will not affect the substantial rights of the defendant and remand for clarification or resentencing is not necessary.

Batiste, supra.

There is a presumption that if the defendant is convicted of two or more offenses based on the same transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently, unless the court expressly directs that some or all be served consecutively. LSA-C.Cr.P. art. 883.
|12In Batiste, defendant and an accomplice robbed two bank tellers at gun point. Defendant pled guilty to two counts of armed robbery, but the trial judge only imposed a single sentence of 15 years. In upholding defendant’s single sentence, this Court obviously determined that the sentences on each count would more appropriately be served concurrently. See also State v. Mitchell, 476 So.2d 825 (La.App. 5 Cir.1985), in which defendant was convicted of three counts of negligent homicide and sentenced to a single term of five years; and State v. Smith, 461 So.2d 434 (La.App. 5 Cir.1984), in which defendant was convicted of three counts of armed robbery and sentenced to a single term of ten years.
In the instant case, the attempted second degree murder of two victims which occurred on the same date at approximately the same time during the same incident was based on the same transaction or constituted parts of a common scheme or plan. Therefore, there is a presumption in favor of concurrent sentences. The sentencing range for attempted second degree murder is between ten and fifty years. Defendant’s sentence, while light, is not unreasonable in light of the facts of this case. Based on the jurisprudence, there is no need to remand the matter for resentenc-ing despite the failure of the trial court to impose two separate sentences on the two counts for which defendant was convicted.

DECREE

For the foregoing reasons, we affirm defendant’s convictions and ten-year sentence.

AFFIRMED