JUDE G. GRAVOIS, Judge.
| gDefendant, Warren Sinceno, had appealed his conviction of second degree murder, in violation of LSA-R.S. 14:3o.!.[1] For the reasons that follow, we affirm. FACTS
The testimony adduced at trial showed that on April 7, 2009, at about 7:00 p.m., paramedics responded to a call for assistance in reference to a shooting that occurred in the 2500 block of Illinois Avenue, in Kenner, Louisiana. When the paramedics arrived, they found the victim, Corey Lewis, lying face down in a prone position, in a parking area, near a fence and a pickup truck. He had suffered a single gunshot wound to the back of the neck and was pronounced dead on the scene.
According to the testimony, defendant was assisting his mother in moving into an apartment located at 2533 Illinois Avenue. During the course of the day, the victim and defendant, who knew each other and *716 apparently did not like each |sother, argued back and forth. At some point later in the day, defendant was observed holding a gun behind his back and then pointing it just before gunfire erupted. There was no testimony that the victim was seen with a gun at the time of the shooting, nor was a gun recovered from or near the victim.
Sergeant Brian McGregor of the Kenner Police Department responded as the lead detective on the case and arrived on the scene shortly after being called about the incident. After learning that the victim was deceased, the scene was secured. Sergeant McGregor supervised the collection of evidence. The victim’s bicycle, which was situated approximately 45 feet from the victim’s body, and one nine millimeter bullet casing, which was next to the fence near the victim’s body, were recovered from the scene that night. The following day, an additional nine millimeter casing was recovered from the bed of a pick-up truck which was parked near the location of the victim’s body.
On the night of the incident, Willie Hale, the victim’s father, identified James Joseph as a potential witness.[2] Joseph, who was at the scene when the police arrived, was later transported to the police station where he gave a recorded statement naming defendant as being involved in the shooting. He also identified defendant in a photographic lineup. Joseph further led the police to 2840 Idaho Street in Kenner where he had hidden a nine millimeter handgun behind a dumpster. Joseph admitted to firing this gun at the scene.[3] Sergeant Joel O’Lear of the Jefferson Parish Sheriffs Office Crime Laboratory testified that the shell casings recovered from the scene were fired by the nine millimeter firearm that was recovered near the dumpster.[4]
| following Joseph’s identification, Sergeant McGregor obtained an arrest warrant for defendant. Defendant was apprehended in West Feliciana Parish on April 13, 2009. When he was apprehended, defendant acted surprised when told that he was wanted for second degree murder.
After being advised of and waiving his rights, defendant gave a recorded statement to the police. In his statement, which was introduced into evidence, defendant explained that a rivalry existed between him and the victim stemming from issues between his brother and the victim. Defendant stated that on the day of the shooting, he was being harassed and threatened by the victim, who was riding up and down the street on a bike. Defendant stated that the victim and his friend “Mike,” later identified as James Joseph, who were both armed and shot at him. Defendant stated that he fired back in self-defense, pushing his mother out of the way. Initially, defendant recounted that “Mike” shot three times and made no mention of the victim shooting a firearm. Defendant later stated that “Mike” shot once and the victim shot twice. He also stated that the victim was walking toward him at the time of the shooting. He was unable to explain how the victim sustained a gun *717 shot wound to the back of his neck. He admitted that the victim and “Mike” were across the street, some distance away from him when he fired the gun. Defendant indicated that he ran away after the shooting, threw his .38 caliber firearm into a canal,[5] and had his mother pack his clothes and drive him to St. Francisville that same night.
Terry Pennington Sinceno, defendant’s mother, testified that she initially told the police that she did not see anything. However, she later admitted that she had observed defendant holding a gun behind his back, then she saw him point it just before gunfire erupted. She repeatedly testified that she never saw defendant | ¡¡shoot the gun. She also stated that she was not close to defendant when the shooting occurred and that she did not remember being pushed out of the way. She admitted that she never saw the victim with a gun on the day of the shooting.
Ms. Sinceno also admitted to picking her son up and driving him to St. Francisville after the shooting. She testified that her son initially denied shooting the victim. She explained that she asked him to talk to the police, but he refused, stating that he did not want to go to jail for life. Defendant also instructed Ms. Sinceno not to say anything to the police.
Cherie Thomas testified that she was helping Ms. Sinceno move on the day of the shooting. When Ms. Thomas went outside to her vehicle, she heard defendant “fussing.” She initially thought he was on the telephone, then later realized that he was speaking to someone outside; however, she never saw the other person. She heard defendant say “You’re lucky these kids are out here.” As Ms. Thomas went back into the apartment, she heard approximately four or five gunshots. She dialed 911 and went outside, where she observed the victim lying on the ground. At that time, she did not see defendant and she never saw him again that day.
Horace Davis testified that he was also helping Ms. Sinceno move on the day of the shooting. He observed defendant and a person consistent with the victim’s description talking, but he did not hear any argument, nor see any weapons. When he was walking to his truck to leave, he heard gunshots; however, he did not see who was shooting because he drove away quickly-
Dr. Susan Garcia, an expert in forensic pathology, performed an autopsy on the victim. She testified that the victim died from a single distant range gunshot wound to the back of the neck, which exited through his mouth. Abrasions on the | ¡¡victim's face were consistent with his falling face forward on a hard object, like concrete.
ASSIGNMENT OF ERROR — Sufficiency of the evidence
On appeal, defendant argues that the trial court erred in denying his motion for a new trial, specifically arguing that the State failed to sufficiently prove that he had the specific intent to kill or inflict great bodily harm because he was acting in self-defense. Defendant also suggests that, at most, he should have been convicted of manslaughter.
The State responds that the evidence was sufficient to convict defendant of second degree murder beyond a reasonable doubt. The State further asserts that the manslaughter issue was not sufficiently briefed, but regardless, is without merit.

*718
LAW AND ANALYSIS

A motion for a new trial is based on the supposition that an injustice has been done to the defendant, and, unless such is shown to have been the case, the motion shall be denied, no matter upon what allegations it is grounded. LSA-C.Cr.P. art. 851. The trial court’s ruling on a motion for a new trial will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Delagardelle, 06-898 (La.App. 5 Cir. 4/11/07), 957 So.2d 825, 829, writ denied, 07-1067 (La.11/21/07), 967 So.2d 1154. On motion of the defendant, the court shall grant a new trial whenever the verdict is contrary to the law and the evidence. LSA-C.Cr.P. art. 851(1).
The constitutional standard for testing the sufficiency of the evidence is whether after viewing the evidence in the light most favorable to the prosecution, |7any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, a review of a criminal conviction record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Id.
Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts. State v. Kempton, 01-572 (La.App. 5 Cir. 12/12/01), 806 So.2d 718, 722. The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438. However, this requirement does not establish a standard that is separate from the Jackson standard, but instead provides a helpful methodology for determining the existence of reasonable doubt. State v. Lathers, 03-941 (La.App. 5 Cir. 2/23/04), 868 So.2d 881, 884. To support the conclusion that the defendant is guilty beyond a reasonable doubt, all evidence, both direct and circumstantial, must be sufficient. Id. (Citation omitted.)
When the trier of fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. State v. Bailey, 04-85, p. 4 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). In the absence of internal contradiction or irreconcilable conflict with ^physical evidence, the testimony of one witness, if believed by the trier-of-fact, is sufficient to convict. State v. Addison, 00-1730, p. 4 (La.App. 5 Cir. 5/16/01), 788 So.2d 608, 613, writ denied, 01-1660 (La.4/26/02), 814 So.2d 549. Further, it is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence. Bailey, supra.
In the instant ease, the State was required to prove the killing of a human being by defendant, and that defendant had the specific intent to kill or inflict great bodily harm. LSA-R.S. 14:30.1. On appeal, defendant challenges the element of specific intent by claiming the evidence proves that he acted in self-defense. Specific intent is “that state of mind which exists when the circumstances indicate *719 that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” LSA-R.S. 14:10(1). Specific intent to kill can be inferred from the intentional use of a deadly weapon such as a knife or a gun. State v. Knight, 09-359 (La.App. 5 Cir. 2/9/10), 34 So.3d 307, 317, writ denied, 10-2444 (La.10/21/11), 73 So.3d 376. Specific intent may be inferred from the circumstances and from the defendant’s actions, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim’s injuries. State v. Graves, 99-113 (La.App. 5 Cir. 8/31/99), 740 So.2d 814, 816, writ denied, 99-3013 (La.3/31/00), 759 So.2d 68. The act of aiming a lethal weapon and discharging it in the direction of the victim supports a finding by the trier of fact that the defendant acted with specific intent to kill. State v. Gonzalez, 07-449, p. 9 (La.App. 5 Cir. 12/27/07), 975 So.2d 3, 8, writ denied, 08-0228 (La.9/19/08), 992 So.2d 949. Whether a defendant possessed the requisite intent in a criminal case is a question for the trier-of-fact, and a review of the correctness of this determination is guided by the Jackson standard. Id.
[^Applying the evidence in this case to these legal principles, we find that the State carried its burden of proving that defendant acted with specific intent to kill or inflict great bodily harm. Defendant admitted that he brought a gun with him when he went to move his mother into an apartment on Illinois Street because there were past conflicts in that neighborhood between his brother and the victim. He admitted that he was “going to get in trouble over there.” Defendant’s mother, Ms. Sinceno, testified that she saw defendant with a gun and observed him pointing it just before gunfire erupted. She further testified that she did not see the victim with a gun. Additionally, defendant himself admitted to shooting at the victim and Joseph. Thus, the State proved the requisite specific intent to kill the victim by proving that defendant aimed and discharged a lethal weapon in the victim’s direction. Gonzalez, supra.
When a defendant in a homicide prosecution claims self-defense, the burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Brown, 414 So.2d 726, 728 (La.1982). The fact that an offender’s conduct is justifiable, although otherwise criminal, constitutes a defense to prosecution for any crime based on that conduct. LSA-R.S. 14:18. According to LSA-R.S. 14:20, a homicide is justifiable “[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger” or “[w]hen committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.” A person |lnwho is the aggressor or who brings on a difficulty cannot claim self-defense, unless he withdraws from the conflict in good faith. LSA-R.S. 14:21. In addition, while there is no unqualified duty to retreat, the possibility of escape from an altercation is a recognized factor in determining whether the defendant had a reasonable belief that deadly force was necessary to avoid the danger. State v. Theriot, 07-71 (La.App. 5 Cir. 6/26/07), 963 So.2d 1012, 1020, writ denied, 07-1598 (La.2/1/08), 976 So.2d 715. *720 The determination of a defendant’s culpability rests on a two-fold test: 1) whether, given the facts presented, the defendant could reasonably have believed his life to be in imminent danger; and 2) whether deadly force was necessary to prevent the danger. Theriot, 963 So.2d at 1020. The jury is the ultimate fact-finder in determining whether the State negated self-defense beyond a reasonable doubt. Theriot, 963 So.2d at 1020.
The evidence in the record before us indicates that the State carried its burden of proving that defendant did not act in self-defense. The evidence reveals that defendant and the victim had a verbal altercation before the shooting. Defendant pointed a handgun at the unarmed victim, who was across the street, and shot him in the back of the neck. Defendant fled the scene, discarded his weapon, and relocated to St. Francisville. These actions are inconsistent with a theory of justifiable homicide. See State v. Patterson, 10-415 (La.App. 5 Cir. 1/11/11), 63 So.3d 140, 149-50, writ denied, 11-0338 (La.6/17/11), 63 So.3d 1037 (citation omitted), where this Court found that a defendant’s flight and attempt to avoid apprehension are circumstances from which a trier of fact may infer a guilty conscience. The Patterson Court also found that a gunshot wound to the back of the head indicated that the defendant became the aggressor and that his claim of self-defense was unsupported by the facts. Id.
|n Although defendant claimed that he was shooting in self-defense, his account of the events as given in his statement to the police was inconsistent with his own mother’s testimony. In his statement, defendant claimed that he pushed his mother out of the way, while Ms. Sinceno testified that she was not close to defendant when the shooting occurred. Defendant’s own account of the shooting was also inconsistent: first, he stated that Joseph shot three times, then stated that Joseph shot once and the victim shot twice. Further, defendant told Ms. Sinceno that he did not want to go to jail for life and encouraged her not to talk to the police.
Defendant also suggests that the verdict against him should have been guilty of manslaughter at most. However, defendant he has not briefed the issue with this Court. Under Rule 2-12.4 of the Uniform Rules, Courts of Appeal, all specifications or assignments of error must be briefed, and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed. State v. Tranchant, 10-459 (La.App. 5 Cir. 11/23/10), 54 So.3d 730, 735, writ denied, 10-2821 (La.4/29/11), 62 So.3d 108.
However, despite this omission, in the interest of justice, we have reviewed this argument. Manslaughter is a homicide that would be either first or second degree murder, except that the offense was committed in “sudden passion” or “heat of blood” caused by provocation sufficient to deprive an average person of his self-control and cool reflection. LSA-R.S. 14:31 A(l). “Sudden passion” and “heat of blood” are not elements of the offense of manslaughter; rather, they are mitigatory factors that may reduce the grade of the offense. State v. Dobbins, 05-342, p. 9 (La.App. 5 Cir. 12/27/05), 920 So.2d 278, 284.
In order to be entitled to the lesser verdict of manslaughter, a defendant is required to prove the mitigatory factors by a preponderance of the evidence. Id. | ^Provocation and time for cooling are questions for the jury to determine under the standard of the average or ordinary person, one with ordinary self-control. State v. Deal, 00-434 *721 (La.11/28/01), 802 So.2d 1254, 1260, cert. denied, 537 U.S. 828, 123 S.Ct. 124, 154 L.Ed.2d 42 (2002). The question for this Court on review is whether a rational trier-of-fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. State v. Lawson, 08-123 (La.App. 5 Cir. 11/12/08), 1 So.3d 516, 523.
In this case, defendant admitted that the victim never touched him, although he claimed that the victim was taunting him throughout the day. However, defendant’s claim of taunting is insufficient to prove that he was only guilty of the responsive verdict of manslaughter. Words or gestures, regardless of how insulting, are not sufficient to reduce a homicide from murder to manslaughter. State v. Arias-Chavarria, 10-116 (La.App. 5 Cir. 9/28/10), 49 So.3d 426, 433, writ denied, 10-2432 (La.2/25/11), 58 So.3d 460 (citation omitted). Further, we note that the victim was shot from behind, which shows that defendant failed to prove necessary provocation by a preponderance of the evidence.
We find that the trial court did not abuse its discretion in denying defendant’s motion for a new trial. Viewing the evidence in the light most favorable to the prosecution, the State presented sufficient evidence to convince a rational juror that defendant committed second degree murder of the victim beyond a reasonable doubt. Further, the evidence shows defendant did not act in self-defense.

TERRORS PATENT REVIEW

The record was reviewed for errors patent review in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). This review did not reveal any errors requiring corrective action.

CONCLUSION

For the foregoing reasons, defendant’s conviction of second degree murder is affirmed.

AFFIRMED

. Defendant was also convicted of felon in possession of a firearm in violation of LSA-R.S. 14:95.1 in this same proceeding, but has not alleged any errors as to that conviction on appeal.

. Joseph was called to testily at trial. He could not remember anything about the incident except trying to “wake up” the victim after the shooting.

. On cross-examination, Sergeant McGregor admitted that gunshot residue tests were not performed on Joseph; he believed, however, that one was performed on the victim.

.It is noted that a nine millimeter firearm recovered from defendant’s mother's vehicle at the time of his arrest was also tested; Sergeant O'Lear found that this gun had not fired the casings found at the scene.

. The police searched the canal where defendant indicated that he had thrown the gun; however, they were unsuccessful in locating the gun.