ROBERT A. CHAISSON, Judge.
|2In this appeal, defendant, Travis Dennis, seeks review of his second degree murder conviction. For the reasons that follow, we affirm his conviction and sentence.

PROCEDURAL HISTORY

On May 6, 2010, a Jefferson Parish Grand Jury indicted defendant, Travis Dennis, with second degree murder of Ronald Smith, in violation of LSA-R.S. 14:30.1 (count one), and attempted first degree murder of Terineisha Ealy,[1] in violation of LSA-R.S. 14:27 and LSA-R.S. 14:30 (count two). At the arraignment on May 7, 2010, defendant pled not guilty.
The matter proceeded to trial on August 23 and 24, 2011. After considering the *1169 evidence presented, the twelve-person jury found defendant guilty of second degree murder and not guilty of attempted first degree murder. On September 15, |a2011, the trial court sentenced defendant to life imprisonment without benefit of parole, probation, or suspension of sentence. Defendant was subsequently granted an out-of-time appeal.

FACTS

In the early morning hours of February 22, 2010, Ronald Smith was shot and killed in the area of Manhattan Boulevard and the Westbank Expressway in Jefferson Parish. The facts leading up to the shooting are as follows:
In the late evening hours of February 21, 2010, Ronald Smith and Terineisha Ealy were visiting with each other and decided to walk to the store.[2] At some point, they encountered Dishall Davis, Smith’s former girlfriend, who asked them to buy her some cigarettes at the store. Smith and Ealy proceeded to the store and then returned to Smith’s apartment, but they did not buy Davis her cigarettes. Later that evening, at approximately 11:30, Davis knocked on Smith’s door looking for her cigarettes. After seeing Ealy in Smith’s apartment and finding out that Smith had not bought her the cigarettes, Davis got angry, walked up behind Smith, pulled his hair, and hit him. A physical altercation ensued between Smith and Davis, and Ealy had to break up the fight. When Smith then carried Davis out of the house by her jacket, she said she would call the police and report that he hit her. The two began fighting again, and Ealy broke up the fight for a second time. Smith and Ealy went inside. Davis left and called the police.
A couple of hours later, at approximately 1:30-2:00 a.m. on February 22, 2010, Ealy and Smith decided to walk to a nearby store. After they left the Exxon station, Ealy and Smith were walking through the parking lot of the daiquiri shop when she noticed a car coming with its “high beams” on. The car swerved right in front of them and stopped. According to Ealy, defendant hopped out of the car |4with a shotgun in his hand and said, “What that you told Dishall?” Ms. Ealy said that she and Smith looked at each other, not knowing what he was talking about because Smith had said nothing about him earlier during the altercation. Defendant then told Smith, “Lay it down. Give me what you got in your pockets.” As Smith was checking his pocket, defendant said, ‘You think I’m playing?” According to Ealy, Smith tried to turn around and run, but defendant shot at him. When Smith tried to run again, defendant shot at him a second time, causing Smith to fall.
Defendant then pointed the gun at Ealy and told her that he would kill her if she said anything. Defendant returned to his car, looked at Smith, and said, “Ha, ha. Rielow, boy I told you I was going to get you.” After defendant fled in his car, a Chevrolet Malibu, Ealy ran to the highway and flagged down a police officer. Deputy Jeffrey Reynolds of the Jefferson Parish Sheriffs Office responded to her call for help. As the officer exited his unit, Ealy informed him that her boyfriend had just been shot. Officer Reynolds went around the corner of the daiquiri shop to the parking lot where Ealy had directed him and observed a black male lying face down on the ground. Although medical assistance was sought, Smith was determined to be dead.[3]
*1170 Ealy advised Deputy Reynolds that the shooter was someone she knew named Travis, who had been in a relationship with Dishall Davis. As a result of information obtained through police investigation, Detective Gary Barteet of the Jefferson Parish Sheriffs Office subsequently interviewed defendant. After being advised of his Miranda[4] rights, defendant gave a statement and initially denied any involvement in Smith’s death. Defendant claimed that he got off of work after 8:00 p.m., went to his house, and never left. He admitted that he owned a Chevy pMalibu, but said it stayed parked at his residence all night. However, he subsequently gave another statement in which he admitted his involvement. In describing the incident as a “self-defense-type encounter,” defendant said that he went to confront Smith about the “foolishness” and Smith advanced toward him in an aggressive manner. He told the detective that he was unarmed, but then retreated to his vehicle to retrieve the shotgun after Smith advanced toward him.
At trial, defendant testified on his own behalf. According to defendant, on the night of the incident, he received a call from Davis who wanted him to go over to her residence. At approximately 2:00-3:00 a.m., he went to her apartment, but left when she did not answer her phone and he could not get in the apartment. As he left through the parking lot, he saw Smith and Ealy. Defendant approached Smith and asked why they were “beefing” over Davis. He claimed he was trying to “squash” what was going on between them over Davis, who went back and forth between them. According to defendant, Smith said he should have killed defendant and Davis, and Ealy was also “bad mouthing.” Defendant remained standing by his car, inside the driver’s doorway, unarmed, with the door open. He claimed that Smith was aggressive and had a bag and kept “running up” on him. Defendant told Smith to back up, but he kept approaching and running his mouth.
According to defendant, Smith dropped the bag, put his hand in his pocket, and made a “clutching” movement, as if he was trying to retrieve a gun or “something.” At this point, defendant retrieved his gun from the car, shot Smith, and left. Defendant testified that Smith’s movement like he was getting a gun made him fear for his life because he knew Smith always carried a gun.

SUFFICIENCY OF THE EVIDENCE

On appeal, defendant challenges the sufficiency of the evidence used to convict him of second degree murder. He specifically contends that the State |fifailed to prove that he had the specific intent to kill or cause great bodily harm and that, at most, he should have been convicted of manslaughter. Defendant further asserts that the killing was in self-defense because he thought his life was in danger when he confronted Smith about abusing Dishall Davis.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 954-55, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, *1171 163 L.Ed.2d 468 (2005). Under this standard, a review of a criminal conviction record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019.
When the trier of fact is confronted with conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to convict. Further, it is |7not the function of the appellate court to assess the credibility of witnesses or to reweigh the evidence. State v. Sinceno, 12-118 (La.App. 5 Cir. 7/31/12), 99 So.3d 712, 718, writ denied, 12-2024 (La.1/25/13), 105 So.3d 713.
In order to support a conviction for second degree murder, the State was required to prove the killing of a human being by defendant, and that defendant had the specific intent to kill or inflict great bodily harm. See LSA-R.S. 14:30.1; State v. King, 11-767 (La.App. 5 Cir. 2/28/12), 88 So.3d 1147, 1152, writ denied, 12-0660 (La.9/14/12), 99 So.3d 35. Defendant challenges the specific intent element of this offense.
Specific intent is “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” LSA-R.S. 14:10(1). Specific intent may be inferred from the circumstances and from the defendant’s actions, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim’s injuries. State v. Sinceno, 99 So.3d at 719. Specific intent to kill can be inferred from the intentional use of a deadly weapon such as a knife or a gun. The act of aiming a lethal weapon and discharging it in the direction of the victim supports a finding by the trier of fact that the defendant acted with specific intent to kill. State v. King, 88 So.3d at 1152. Whether a defendant possessed the requisite intent in a criminal case is a question for the trier of fact, and a review of the correctness of this determination is guided by the Jackson standard. State v. Sinceno, 99 So.3d at 719.
Applying the evidence in this case to these legal principles, we find that the State carried its burden of proving that defendant acted with specific intent to kill or inflict great bodily harm. Defendant admitted that he shot the victim with a shotgun, and that the gun fired twice. Ealy, an eyewitness to the shooting, | ^identified defendant as the shooter and testified that the victim was attempting to run away when defendant shot the first time. She said the victim was shot at again as he continued to run. Moreover, Ealy testified that as defendant left the scene, he looked in the victim’s direction and said, “Ha, ha. Rielow, boy I told you I was going to get you.”[5] Thus, the State proved beyond a reasonable doubt that defendant acted with specific intent to kill or inflict great bodily harm.
*1172 Defendant does not deny that he shot the victim, but suggests that he acted in self-defense. He contends that when he confronted the victim about abusing Dis-hall Davis, the victim made a movement that led defendant to believe that he was trying to retrieve a gun. Thinking his life was in danger, defendant got his weapon and shot first.
When a defendant in a homicide prosecution claims self-defense or the defense of another, the burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense or in defense of another. State v. Reed, 11-507 (La.App. 5 Cir. 2/14/12), 88 So.3d 601, 607, writ denied, 12-0644 (La.9/14/12), 97 So.3d 1014. The fact that an offender’s conduct is justifiable, although otherwise criminal, constitutes a defense to prosecution for any crime based on that conduct. LSA-R.S. 14:18. According to LSA-R.S. 14:20(A)(1), a homicide is justifiable “[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.”
A person who is the aggressor or who brings on a difficulty cannot claim self-defense, unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know his desire is to withdraw and discontinue the conflict. LSA-R.S. 14:21. In addition, while there is no ^unqualified duty to retreat, the possibility of escape from an altercation is a recognized factor in determining whether the defendant had a reasonable belief that deadly force was necessary to avoid the danger. State v. King, 88 So.3d at 1153.
The determination of a defendant’s culpability rests on a two-fold test: 1) whether, given the facts presented, the defendant could reasonably have believed his life to be in imminent danger; and 2) whether deadly force was necessary to prevent the danger. The jury is the ultimate fact-finder in determining whether the State negated self-defense beyond a reasonable doubt. State v. Sinceno, 99 So.3d at 720.
In the instant case, the jury was presented with two versions of the events at the time of the shooting. The State presented evidence that as Smith and Ealy were walking in the parking lot, defendant swerved his car right in front of them and stopped. Defendant exited the vehicle with a gun in his hand and confronted Smith about the situation involving Davis. Defendant then told Smith to “give me what you got in your pockets.” As Smith checked his pocket, defendant said, “You think I’m playing?” Smith then tried to turn around and run, but defendant shot at the unarmed victim. Smith continued in his attempts to flee until he was shot again and fell to the ground.
Another witness, Michael Walker, observed a vehicle pull up in a parking lot near a black male and a black female who were walking. Walker watched a person jump out of the vehicle with something long in his hand. He saw the person run behind the daiquiri shop and then heard a “pow.” Walker heard another shot and a female screaming. This witness then observed someone run back to the Chevrolet Malibu and speed off.
In contrast to this testimony, defendant testified that when he saw Smith and Ealy walking in the parking lot, he stopped his car and asked Smith why they were 110“beefing” over Davis. Defendant claimed he was trying to “squash” what was going on between them over Davis, who went back and forth between them. According to defendant, Smith said that he should have killed him and Davis. At this time, defendant testified that he was un *1173 armed and that he remained standing by his car, inside the open driver’s door. However, Smith became aggressive and kept approaching defendant. Even though defendant told Smith to back up, Smith kept coming toward defendant and running his mouth. Smith then dropped the bag he was carrying, put his hand in his pocket, and made a “clutching” motion, as if he was trying to retrieve a gun. It was at this point that defendant retrieved the shotgun from his vehicle and shot Smith. Defendant claimed that he feared for his life when he saw Smith’s “clutching” motion because he knew Smith regularly carried a gun and had pulled a gun on defendant on previous occasions.
The jury heard this conflicting testimony and apparently gave more credit to the version of events as portrayed by the State witnesses. As such, the jury could have reasonably concluded that defendant could not have believed that he was in imminent danger of losing his life or receiving great bodily harm when the victim was not attacking him, was attempting to run away, and was unarmed. Therefore, we find that the State proved beyond a reasonable doubt that defendant did not act in self-defense.
On appeal, defendant also suggests that the evidence at best supported a verdict of manslaughter. Defendant contends that when he approached Smith, he was overwhelmed with anger and “lost control” because Smith had brutally beaten Davis earlier that evening.
LSA-R.S. 14:31(A)(1) defines manslaughter as a homicide that would be either first or second degree murder, “but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive |1Tan average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed.”
“Sudden passion” and “heat of blood” are not elements of the offense of manslaughter; rather, they are mitigatory factors that may reduce the grade of the offense. In order to be entitled to the lesser verdict of manslaughter, a defendant is required to prove the mitigatory factors by a preponderance of the evidence. Provocation and time for cooling are questions for the jury to determine under the standard of the average or ordinary person, one with ordinary self-control. State v. Arias-Chavarria, 10-116 (La.App. 5 Cir. 9/28/10), 49 So.3d 426, 431-32. The question for this Court on review is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. State v. Sinceno, 99 So.3d at 721.
In the instant case, as evidenced by its verdict of second degree murder, the jury obviously rejected the responsive verdict of manslaughter. The evidence supports the jury’s determination.
As noted by the State in its appellate brief, at trial defendant did not claim “sudden passion” or “heat of blood.” At trial, evidence was presented that there was a physical altercation between Dishall Davis and the victim several hours prior to the shooting of the victim by defendant. However, defendant was not present at the time of the altercation, and during his trial testimony, defendant never specifically testified that he knew about the details of the altercation that had occurred hours before. In fact, defendant testified that Davis called him and wanted him to go over to her apartment. Defendant did, but then left after Davis 112did not answer the phone and he could not get into the apartment. *1174 As defendant left through the parking lot, he saw Smith and Ealy walking. At trial, defendant testified regarding his reasons for confronting Smith. He claimed that he approached Smith and asked why they were “beefing” over Davis. Further, defendant testified that he wanted to “squash” the issues between him and the victim over Davis. He never claimed that he was angry or wanted to confront the victim regarding the abuse he had supposedly inflicted on Davis.
During his trial testimony, defendant also claimed that at the time of his encounter with Smith, Smith was “running up” on him and approaching him. Defendant did not claim that the victim touched him. Defendant further asserted at trial that the victim was “running off at the mouth.” However, words or gestures, regardless of how insulting, are not sufficient to reduce a homicide from murder to manslaughter. State v. Sinceno, 99 So.3d at 721. Moreover, Ealy testified that the victim was shot as he was attempting to run from defendant and further that defendant did not have a gun on him at the time of the shooting.
Considering the circumstances of this case, defendant’s actions, and the victim’s injuries, we find that the evidence was constitutionally sufficient to support the jury’s finding that defendant had the specific intent to kill or inflict great bodily harm on the victim and that defendant did not act in self-defense. Accordingly, the arguments raised by defendant relating to the sufficiency of the evidence used to convict him of second degree murder are without merit.

ERROR PATENT REVIEW

We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals a discrepancy between the commitment and transcript with regard to the hard labor provision of 1 ^defendant’s sentence. Although the commitment reflects that defendant’s sentence was imposed at hard labor, the transcript does not reflect that the judge ordered the sentence be imposed at hard labor or provided that the sentence would be served with the Department of Corrections.
LSA-C.Cr.P. art. 879 requires a court to impose a determinate sentence. If the applicable sentencing statute allows discretion, the failure to indicate whether the sentence is to be served at hard labor is an impermissible indeterminate sentence. State v. Norman, 05-794, p. 8 (La.App. 5 Cir. 3/14/06), 926 So.2d 657, 661, writ denied, 06-1366 (La.1/12/07), 948 So.2d 145. Defendant was sentenced pursuant to LSA-R.S. 14:30.1, which mandates the sentence be served at hard labor. As such, the trial court’s failure to state that the sentence was imposed at hard labor is harmless error and no corrective action is required. See State v. Norman, supra, and State v. Franklin, 11-216 (La.App. 5 Cir. 12/28/11), 87 So.3d 860, 881, writ denied, 12-0337 (La.9/12/12), 98 So.3d 811.
Accordingly, for the reasons set forth herein, we affirm defendant’s conviction and sentence.

AFFIRMED

. It is noted that there are discrepancies in the record with regard to the spelling of Ms. Ealy's first name. In the indictment, her first name is spelled "Tereinisha,” and in the transcript, it is spelled "Terineisha” and "Tennei-sha.”

. Ms. Ealy testified that she had known Ronald Smith for about two years prior to the shooting, but had started dating him on the night of February 21, 2010.

. At trial, it was stipulated that Smith died of a gunshot wound to the middle of his chest.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Ms. Ealy testified that she knew Ronald Smith as "Rielow.”