SUSAN M. CHEHARDY, Chief Judge.
[aOn appeal, defendant challenges the denial of his motion to quash and denial of his motion to suppress evidence. For the following reasons, we affirm his conviction and sentence.

Procedural history

On August 2, 2012, the Jefferson Parish District Attorney filed a bill of information charging defendant, Donte J. Williams, with possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1. On August 10, 2012, defendant filed omnibus pre-trial motions, including, inter alia, motions to suppress his statement and evidence, which were later denied.
On April 8, 2013, defendant filed a motion quash the bill of information on the basis that La. R.S. 14:95.1 was unconstitutional in light of the 2012 amendment to the Louisiana Constitution. The trial court heard and denied defendant’s motion to quash on May 20, 2013.
On July 9, 2013, before trial commenced, defendant reurged his motion to suppress evidence, which the court again denied. Trial commenced before a 12-person jury, which found defendant guilty as charged.
|sOn August 5, 2013, defendant filed a motion for post-verdict judgment of acquittal and motion for new trial, which the trial *729 court denied. After defendant waived statutory sentencing delays, the trial court immediately sentenced defendant to 10 years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, with credit for time served. That day, defendant filed a written motion for appeal, which was granted.

Facts

At trial, Deputy Brandon Veal of the Jefferson Parish Sheriffs Office testified that, he was on patrol shortly after midnight on July 10, 2012, when he observed the driver of a green Ford Explorer commit a traffic violation by changing lanes without signaling. Deputy Veal initiated a stop of the vehicle.
As Deputy Veal observed the vehicle, he noticed that its windows were tinted so he was unable to see how many occupants were in the vehicle. Further, Deputy Veal testified that the stop occurred after midnight so it was dark. Deputy Veal also stated that the area of the stop was known for high crime and narcotics activity. After the driver stopped the vehicle, Deputy Veal, using his vehicle’s “P.A.” system, ordered the occupants to exit the vehicle.
The driver exited from his door and a rear passenger exited from the driver’s side of the vehicle; they left both driver’s side doors open after exiting the vehicle. As the occupants moved away, Deputy Veal walked toward the vehicle and shined his flashlight into the vehicle. When he shined his flashlight on the floor of the backseat area, Deputy Veal observed a semi-automatic, .40-caliber handgun on the rear floorboard. He stated that there was a “hump” in the middle of the floorboard and that the gun was on the far side, or passenger side, of that “hump.”
Once Deputy Veal observed a handgun on the floorboard of the backseat, he instructed the occupants to walk toward his police unit to put distance between |4them and the weapon. At that point, additional deputies arrived at the scene so the driver, later identified as defendant-herein, and the passenger were handcuffed and seated in Deputy Veal’s police unit.
Deputy Veal advised defendant of his constitutional rights.[1] According to Deputy Veal, defendant indicated that he understood those rights and waived them. While they were in Deputy Veal’s police unit, Deputy Veal printed out a waiver of constitutional rights form, which defendant initialed and signed.
Deputy Veal then questioned defendant about the firearm, which defendant admitted that he had purchased “off the street.” Defendant also admitted that he had a prior felony conviction.[2] Deputy Veal stated that defendant was cooperative. Further, Deputy Veal testified that he did not force or coerce defendant to make a statement at any time. Deputy Veal did not question the passenger, Mr. Wilson.
While Deputy Veal was questioning defendant, crime scene personnel collected the gun, which contained “live rounds.” Crime scene personnel also took photographs of the vehicle, including the location of the weapon on the floorboard of the backseat, which were introduced at the suppression hearing immediately before trial.
At trial, Claudette Williams, defendant’s mother, testified that she was familiar with *730 defendant’s vehicle and had been a passenger of the vehicle at night. She explained that the backseat floorboard of the vehicle was dark and not visible during the day, and definitely not visible at night. Mrs. Williams also explained that the vehicle’s doors did not fully open, so, even with the doors open and a flashlight, a person would have to be inside the vehicle to observe an object on the floor of the backseat because it was narrow and dark.
1 ^Defendant testified on his own behalf that, after his prior convictions, he knew that he was not supposed to possess a firearm so he had never knowingly or intentionally possessed a firearm. He also admitted that he was still “on parole” for his most recent convictions on the date of the offense.
Defendant testified that, on the night of the traffic stop, he was bringing his friend, Mr. Wilson, home when the officer pulled him over. Defendant was driving and Mr. Wilson was riding in the backseat. Defendant stated that, after the officer arrested the two men, Mr. Wilson admitted to defendant that he had left a gun in defendant’s vehicle and asked defendant to “take the charge.” Defendant testified that, if he had known, he would not have allowed Mr. Wilson into his vehicle because he knew that he was not supposed to be around firearms. Defendant stated that he “took the charge” for Mr. Wilson since Mr. Wilson was afraid to go to jail.
After hearing the testimony and viewing the evidence, the twelve-person jury found defendant guilty as charged. This appeal follows.

Law and Argument

On appeal, defendant challenges his conviction, raising two assignments of error: first, the trial court erred by failing to quash the indictment because the recent amendment to the Louisiana Constitution rendered this crime unconstitutional; and second, the motion to suppress evidence should have been granted because defendant’s arrest and the search of his car were illegal.
In his first assignment of error, defendant argues that the 2012 amendment to the La. Const. Art. 1, § 11 rendered La. R.S. 14:95.1 unconstitutional because La. R.S. 14:95.1 criminalizes behavior that is now protected. Specifically, defendant asserts that the amendment barred the legislature from enacting laws that infringe upon a citizen’s right to keep and bear arms. Defendant notes that any restriction |fiof this right is subject to strict scrutiny, which requires the State to show that the restriction serves a compelling state interest. Finally, defendant contends that La. R.S. 14:95.1 deprives defendant of equal protection under the law as guaranteed under the Fourteenth Amendment.
The State, relying on the Louisiana Supreme Court’s recent pronouncement in State v. Draughter, 13-0914 (La.12/10/13), 130 So.3d 855, responds that the trial court properly denied defendant’s motion to quash as La. R.S. 14:95.1 does not violate La. Const. Art. 1, § 11 as amended.
Before its recent amendment, Article 1, § 11 of the Louisiana Constitution provided: “The right of each citizen to keep and bear arms shall not be abridged, but this provision shall not prevent the passage of laws to prohibit the carrying of weapons concealed on the person.” After the 2012 amendment, Article 1, § 11 provides that: “The right of each citizen to keep and bear arms is fundamental and shall not be infringed. Any restriction of this right shall be subject to strict scrutiny.” The effective date of this new amendment was December 10, 2012. Id. at 862.
Generally, legislation has prospective effect from its effective date. The Draughter court, following State ex rel. *731 Taylor v. Whitley, 606 So.2d 1292, 1296 (La.1992), found, however, that the amendment to Article 1, § 11 of the Louisiana Constitution has retroactive effect to cases pending on direct review or not yet final, on the date that the amendment became effective. Id. at 863-864.
In this case, defendant violated La. R.S. 14:95.1 on July 10, 2012, prior to the effective date of the constitutional amendment. Further, defendant’s case was still pending on direct review at the time the amendment became effective. Thus, under Draughter, the amendment has retroactive effect in this case.
|7In another factual similarity, defendant, like Draughter, was on parole at the time of his offense, so he was under state supervision at the time of his arrest for La. R.S. 14:95.1. Id. at 865. In Draughter, the Louisiana Supreme Court held the State must exercise continuing supervision and control over convicted felons on probation or parole as they complete the punishments because, similar to inmates in a custodial setting, convicted felons serving sentences of probation or parole are equally categorized as having:
necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others.
Id. at 867 (citation omitted).
The court further found that, because these persons are still serving a portion of a criminal sentence under state supervision, the State has a compelling interest for limited infringement of fundamental constitutional rights, including the right to bear arms. After reviewing the statute with strict scrutiny, the Louisiana Supreme Court held that La. R.S. 14:95.1, as applied to a convicted felon still under state supervision, did not unconstitutionally infringe upon the right to bear arms secured by Article 1, § 11 of the Louisiana Constitution. Id. at 868. Accordingly, relying on Draughter, we find that the trial court did not err in denying defendant’s motion to quash the indictment.
Finally, defendant contends that La. R.S. 14:95.1 deprives defendant of equal protection under the law as guaranteed under the Fourteenth Amendment. A defendant is limited on appeal to those grounds articulated at trial, and a new basis for the objection may not be raised for the first time on appeal. State v. Jackson, 450 So.2d 621 (La.1984); State v. Alvarez, 10-925 (La.App. 5 Cir. 6/29/11), 71 So.3d 1079, 1085. This issue was not raised in the trial court and is not properly before this Court on appeal. This assignment of error lacks merit.
In his second assignment of error, defendant argues that the motion to suppress evidence should have been granted because defendant’s arrest and the search of his car were illegal. Defendant specifically contends that the traffic stop was not justified and, thus, all evidence obtained from the stop was “fruit of the poisonous tree.”
At the suppression hearing, the trial court found that there was probable cause for the stop. The court further found that, after the valid stop, defendant exited the vehicle at the officer’s instruction and the officer observed a handgun on the floorboard in the backseat. The court noted that the officer did not enter or search the vehicle. The court found that the evidence was “in plain view” and, thus, seized under an exception to the warrant requirement.
On the morning of trial, defendant re-urged his motion to suppress on the basis that crime scene photographs of the interi- or of the vehicle demonstrate that the *732 officer could not have seen the gun without searching the vehicle. After reviewing the photographs, the trial judge again refused to suppress the evidence because “if you’re standing up and ... looking down, ... that would be in plain sight from the [rear] passenger’s door because ... it’s a rather large gun;[3] the hump in the middle was not more than four inches high. It’s ... actually ... easier to see the gun.”
 The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Leonard, 06-361 (La.App. 5 Cir. 10/31/06), 945 So.2d 764, 765. The exclusionary rule bars, as illegal fruit, evidence obtained either during or as a direct result of an unlawful invasion. State v. Nicholas, 06-903 (La.App. 5 Cir. 4/24/07), 958 So.2d 682, 687. Warrantless searches and seizures are per se unreasonable, unless justified by one of the exceptions to the warrant requirement. Leonard, 945 So.2d at 765.
The first issue is whether the officers had reasonable suspicion to conduct a traffic stop. The right of law enforcement officers to stop and interrogate those reasonably suspected of engaging in criminal activity is recognized by La.C.Cr.P. art. 215.1, as well as by State and federal jurisprudence. Leonard, 945 So.2d at 766. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
The Terry standard, as codified in La. C.Cr.P. art. 215.1, authorizes police officers to stop a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit an offense and demand that the person identify himself and explain his actions. A violation of a traffic regulation provides reasonable suspicion to stop a vehicle. State v. Davis, 09-452 (La.App. 5 Cir. 1/26/10), 31 So.3d 513, 516, writ denied, 10-2201 (La.10/21/11), 73 So.3d 373. Police officers may make an initial traffic stop after observing a traffic infraction, even if the stop is a pretext to investigate for controlled dangerous substances. Id. at 517. The fact that an officer does not issue a traffic citation is irrelevant to the constitutionality of the stop. State v. Martin, 11-160 (La.App. 5 Cir. 12/28/11), 83 So.3d 230, 238.
In the instant case, Deputy Veal observed defendant change lanes without signaling, which is a traffic violation. See, La. R.S. 32:104(D) (signals ... shall be used to indicate an intention to ... change lanes ... ). The trial judge found that the | ¡¡¡officer was justified in stopping defendant for the traffic violation. We find no error in that ruling.
The final inquiry is whether the evidence was lawfully seized without a warrant. Under the “plain view” doctrine, if police are lawfully in a position from which they view an object that has an incriminating nature that is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. Horton v. California, 496 U.S. 128, 136-137, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990); State v. Leger, 05-0011 (La.7/10/06), 936 So.2d 108, 155, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007).
Here, the officer observed, in plain view, a large firearm on the floor *733 board of the backseat. Because the officer had prior justification to look into the vehicle, and it was immediately apparent to the officer without close inspection that the firearm was contraband, the “plain view” exception to the warrant requirement applies, and the seizure of the firearm was permissible. See Horton v. California, supra; State v. Leger, supra.
At the hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La.C.Cr.P. art. 703(D); State v. Lewis, 12-902 (La.App. 5 Cir. 6/27/13), 121 So.3d 128, 134. The trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. Lems, supra. When a trial court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings. Id. Thus, we find no error in the trial court’s ruling denying defendant’s motion to suppress evidence.
| uError patent discussion
Finally, pursuant to La.C.Cr.P. art. 920, we have reviewed the record for errors patent and found none requiring corrective action.

Conclusion

In sum, after finding no merit in defendant’s assignments of error, we affirm defendant’s conviction and sentence.

AFFIRMED.

. See, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. At trial, defendant and the State stipulated to defendant’s prior convictions of possession with intent to distribute marijuana and five counts of distribution of marijuana. The documents regarding defendant’s previous convictions were admitted into evidence at trial.

. The gun was a .40 caliber Smith & Wesson.