STEPHEN J. WINDHORST, Judge.
1 ^Defendant, Sean Griffin, was convicted of second degree murder of Douglas Cray-ton on count one, and of the responsive verdict of attempted possession of a firearm by a convicted felon on count two. *36 Defendant was resenteneed[1] on count one, second degree murder, to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence; and on count two, attempted possession of a firearm by a convicted felon to seven years and six months imprisonment at hard labor. The trial court ordered the sentences to run concurrently with one another and consecutively with any other sentence defendant was serving at the time of sentencing. Defendant was ordered to pay a fine of $500.00 on count two and all court costs. For the reasons that follow, defendant’s convictions and sentences are affirmed, and this case is remanded for correction of commitment.
|,.FACTS
On August 28, 2011, Frederick Williams was living in an apartment located at 251 Barry Street, and the Kingfish Lounge[2] was located in front of his residence. At about 12:30 A.M., Mr. Williams and Tiffany Noel were talking . outside of Mr. Williams’ residence when defendant[3] walked up and asked Ms. Noel about Mr. Crayton’s whereabouts.[4] Ms. Noel turned around and attempted to walk away. Defendant grabbed Ms. Noel’s shirt, pulled her hair, and “smacked” her. Ms. Noel fell down and defendant “smacked her a few more times.” Mr. Williams picked Ms. Noel up.
Although Mr. Crayton was not present when the argument began, he subsequently ran out of a truck in the parking lot and began fighting with defendant. While Mr. Crayton and defendant were “tussling,” Mr. Williams heard defendant state, “I’m going to kill you.” Defendant and Mr. Crayton were wrestling with a gun, when Mr. Crayton knocked the gun out of defendant’s hand and into the parking lot. Defendant, Mr. Crayton, and Mr. Williams ran towards the gun. Mr. Williams and Mr. Crayton did not attempt to pick up the gun. Defendant picked up the gun, shot Mr. Crayton and fled.
COUNSELED ASSIGNMENTS OF ERROR
In his third counseled assignment of error, defendant contends that his conviction cannot stand because the State failed to prove beyond a reasonable doubt that he did not act in self-defense.[5] Defen *37 dant claims that he shot the victim |4to prevent great bodily harm or even death to himself.[6] Defendant argues that under the circumstances, retreat was not an option, especially when it was two individuals against one. Defendant asserts that any reasonable person would have feared for their safety and concluded that the force used was necessary to stop Mr. Crayton’s advancement.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or as in this case, a mixture of both, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt when that evidence is viewed in the light most favorable to the prosecution. See Jackson v. Virginia, 443 U.S. 307, 99 5.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
Defendant was convicted of second degree murder of Mr. Crayton. Second degree murder is the killing of a human being when the offender has a specific intent to MU or inflict great bodüy harm. La. R.S. 14:30.1A(1). Specific intent is “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to foUow his act or faüure to act.” La. R.S. 14:10(1). The determination of specific intent is a question of fact. State v. Durand, 07-4 (La.App. 5 Cir. 6/26/07), 963 So.2d 1028, 1034, writ denied, 07-1545 (La.1/25/08), 973 So.2d 753. Specific intent to Mil may be inferred from a defendant’s act of pointing a gun and firing at a person. State v. Hoffman, 98-3118 (La.4/11/00), 768 So.2d 542, 585, cert. denied, 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (2000); State v. Batiste, 06-869, (La.App. 5 Cir. 4/11/07), 958 So.2d 24, 27.
A positive identification by only one witness is sufficient to support a conviction. Neal, 796 So.2d at 658. Mr. Williams testified that defendant was the shooter, identified defendant as the shooter in the survefilance video, and identified defendant at trial as the shooter. The jury obviously accepted Mr. Williams’s testimony in which he implicated and identified defendant as the perpetrator. The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness. Id. The evidence was legally sufficient to prove defendant’s identity as the shooter.
Detective Zanotelli testified that Mr. Wilhams, Ms. Noel, and Tiffany Frey stated that defendant shot Mr. Crayton.[7] Mr. WUliams testified that he heard defendant threaten Mr. Crayton by stating, “I’m going to Mil you.” Mr. Williams also testified that he saw defendant with a gun and did not see Mr. Crayton with a gun. Dr. Garcia testified that Mr. Crayton’s cause *38 of death was two gunshot wounds, one gunshot to the wrist and the other to the abdomen. She testified that both wounds could have been caused by a single projectile. Further, defendant testified that he picked up the gun and fired one shot at Mr. Crayton. Considering the foregoing, a rational trier of fact could have found that the evidence was sufficient under the Jackson standard to find that defendant had the specific intent to kill or inflict great bodily harm.
La. R.S. 14:20A(1) provides that a homicide is justifiable “When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to |fisave himself from that danger.” When a defendant in a homicide prosecution claims self-defense, the burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Reed, 11-507 (La.App. 5 Cir. 2/14/12), 88 So.3d 601, 607, writ denied, 12-644 (La.9/14/12), 97 So.3d 1014. The fact that an offender’s conduct is justifiable, although otherwise criminal, constitutes a defense to prosecution for any crime based on that conduct. La. R.S. 14:18; State v. Sparkman, 13-640 (La.App. 5 Cir. 2/12/14), 136 So.3d 98, 106.
La. R.S. 14:21 provides, “A person who is the aggressor or who brings on a difficulty cannot claim self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know his desire is to withdraw and discontinue the conflict.” While there is no unqualified duty to retreat, the possibility of escape from an altercation is a recognized factor in determining whether the defendant had a reasonable belief that deadly force was necessary to avoid the danger. State v. Sparkman, 136 So.3d at 107; State v. King, 11-767 (La.App. 5 Cir. 2/28/12), 88 So.3d 1147, 1153, writ denied, 12-660 (La.9/14/12), 99 So.3d 35.
The determination of a defendant’s culpability rests on a two-fold test: 1) whether, given the facts presented, the defendant could reasonably have believed his life to be in imminent danger; and 2) whether deadly force was necessary to prevent the danger. State v. Sinceno, 12-118 (La.App. 5 Cir. 7/31/12), 99 So.3d 712, 720, writ denied, 12-2024 (La.1/25/13), 105 So.3d 713. The jury is the ultimate fact-finder in determining whether the State negated self-defense beyond a reasonable doubt. Id.
The State presented evidence to negate defendant’s claim of self-defense beyond a reasonable doubt. Mr. Williams testified that he did not observe Mr. Cray-ton threaten defendant and he did not observe him with a gun. Mr. Williams 17also testified that Mr. Crayton did not attempt to pick up the gun after it was knocked from defendant’s hand. The surveillance video also shows that Mr. Cray-ton did not attempt to pick up the gun, and that Mr. Crayton appeared to be backing away from defendant at the time defendant shot him.
On the other hand, defendant testified Mr. Crayton struck him with a gun and threatened to kill him. Defendant also testified that he fired one gunshot to defend himself because Mr. Crayton said he was going to kill him. Defendant testified that he fled the scene because Ms. Frey stated that the police were going to kill him.
The jury heard defendant’s conflicting testimony and obviously believed the version of events established by the State’s witnesses. The trial court properly instructed the jury regarding self-defense. The jury is the ultimate fact-finder in de *39 termining whether the State negated self-defense beyond a reasonable doubt. Sin-ceno, supra. Moreover, the credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. Credibility of witnesses will not be reweighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. We find that the evidence presented was sufficient for the jury to conclude that the State had negated defendant’s claim of self-defense beyond a reasonable doubt regarding the second degree murder of Mr. Crayton.
Accordingly, we find defendant’s third counseled assignment of error to be without merit.
| sIn his first counseled assignment of error, defendant contends that the trial court erred by failing to quash the indictment because the recent amendment to the Louisiana Constitution rendered La. R.S. 14:95.1 unconstitutional.[8]
Defendant argues that La. R.S. 14:95.1 is unconstitutional after the ratification of the recent constitutional amendment in 2012 because the statute restricts a felon’s right to carry a handgun without a sufficient State interest to infringe upon that right. Defendant asserts that the statute exempts various classes from its application and thereby denies defendant due process and equal protection under the law. Defendant further asserts that it is unclear whether he was under State supervision at the time of the Mr. Crayton’s death and, therefore, he had the right to carry a firearm.[9]
Before its recent amendment, Article 1, § 11 of the Louisiana Constitution provided: “The right of each citizen to keep and bear arms shall not be abridged, but this provision shall not prevent the passage of laws to prohibit the carrying of weapons concealed on the person.” State v. Draughter, 13-914 (La.12/10/13), 130 So.3d 855, 862. After the 2012 amendment, this section of the Louisiana Constitution now requires a strict scrutiny standard. The 2012 amendment provides that: “The right of each citizen to keep and bear arms is fundamental and shall not be infringed. Any restriction of this right shall be subject to strict scrutiny.” The effective date of this new amendment was December 10, 2012.[10] Draughter, 130 So.3d at 862; State v. Williams, 13-732 (La.App. 5 Cir. 3/26/14), 138 So.3d 727, 730.
Generally, legislation has prospective effect from its effective date. The Draughter court found that the amendment to Article 1, § 11 of the Louisiana Constitution has retroactive effect to cases pending direct review or not yet final on the date the amendment became effective. *40 Draughter, 130 So.3d at 864; See also, Williams, 138 So.3d at 730-31.
Defendant violated La. R.S. 14:95.1 on August 28, 2011, prior to the effective date of the constitutional amendment. Defendant’s case was still pending on direct review at the time-the amendment became effective. Thus, under Draughter, the amendment has retroactive effect in this case. See Williams, 138 So.3d at 731.
The Louisiana Supreme Court recently held in State v. Eberhardt, 13-2306 (La.7/1/14), 145 So.3d 377 that La. R.S. 14:95.1 is not unconstitutional as violative of La. Const, art. I, § 11. The Court found that the 2012 amendment of the La. Const, art. I, § 11 did not have an effect of a change in the nature of the right to bear arms by adding the term “fundamental” to its description. Eberhardt, 145 So.3d at 383 (citing State v. Webb, 13-1681 (La.5/7/14), 144 So.3d 971, 977 n. 3). The Court also recognized that the right to keep and bear arms, like other rights guaranteed by the Louisiana Constitution, is not absolute. Id. at 383.
The Court found that La. R.S. 14:95.1 serves a compelling governmental interest that has long been jurisprudentially recognized and is grounded in the legislature’s intent to protect the safety of the general public from felons convicted of specified serious crimes, who have demonstrated a dangerous disregard for the law and the safety of others, and who present a potential threat for further or future criminal activity. Id. at 386. The Court further found that the law is narrowly | intailored in its application to the possession of firearms or the carrying of concealed weapons for a period of only ten years from the date of completion of sentence, probation, parole, or suspension of sentence, and to only those convicted of the enumerated felonies determined by the legislature to be offenses having the actual or potential danger of harm to other members of the general public. Id. at 385.
In Eberhardt, the Court noted that the defendants reoffended within a relatively short period of time following the completion of previously imposed State supervision. The Court found that the defendants illustrated the principles of La. R.S. 14:95.1, that certain convicted felons have demonstrated a dangerous disregard for the law and present a potential threat of further or future criminal activity and are more likely than non-felons to engage illegal and violent firearm use. The Court found that the defendants’ challenges to the constitutionality of La. R.S. 14:95.1 had no merit.. Eberhardt, 145 So.3d at 386.
The record reflects that defendant pled guilty to possession of cocaine in Orleans Parish on March 18, 2008, his four-year sentence was suspended, and he received drug court probation. On May 7, 2009, his probation was revoked, and defendant was ordered to serve his original sentence of four years at hard labor. At the time of the offense in the present case, on August 28, 2011, defendant was under State supérvision.[11] La. R.S. 14:95.1, as applied to a convicted felon still under State supervision, does not unconstitutionally infringe upon the right to bear arms secured by Article 1, § 11 of the Louisiana Constitution. Draughter, 130 So.3d at 868; see also, Williams, 138 So.3d at 731.
Even if defendant was not under State supervision at the time of the offense, defendant reoffended within a relatively short period of time following the Jiicompletion of his previously imposed *41 State supervision. Defendant’s probation was revoked on May 7, 2009, regarding his prior conviction of possession of cocaine, and he was charged with committing a violation of La. R.S. 14:95.1 on December 29, 2011, approximately two-and-a-half years later. Therefore, defendant illustrated the principles of La. R.S. 14:95.1, that certain convicted felons have demonstrated a dangerous disregard for the law and present a potential threat of further or future criminal activity and are more likely than non-felons to engage in illegal and violent firearm use.
Accordingly, we find that defendant’s challenge to the constitutionality of La. R.S. 14:95.1 is without merit. The trial court did not err in denying defendant’s motion to quash the indictment. Defendant’s first counseled assignment of error number is therefore without merit.
In defendant’s second counseled assignment of error, defendant contends that the trial court erred in failing to grant the defense’s challenge for cause to Allen Dyess. Defendant argues that the trial court committed reversible error when prospective juror, Allen Dyess, was allowed to remain in the jury venire although his father at one time supervised the lead detective in this case, Detective Zanotelli. Defendant asserts that Mr. Dyess’ responses and relationship with law enforcement rendered him incapable of being fair and impartial despite his protestations to the contrary. Defendant states that when a challenge for cause is erroneously denied, the prejudice is presumed, and the harmless error rule does not apply-
The Sixth Amendment to the United States Constitution guarantees the accused the right to trial by an impartial jury. State v. Munson, 12-327 (La.App. 5 Cir. 4/10/13), 115 So.3d 6, 12, writ denied, 13-1083 (La.11/22/13), 125 So.3d 476. Further, La. Const. Art. I, § 17 guarantees the accused the right to full voir dire examination of prospective jurors and the right to challenge those jurors | ^peremptorily. La.C.Cr.P. art. 797, which sets forth the grounds for which a juror may be challenged for cause, provides, in pertinent part, that:
The state or the defendant may challenge a juror for cause on the ground that:
* * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court; or
[[Image here]]
The trial judge is vested with broad discretion in ruling on challenges for cause, and his ruling will be reversed only when a review of the entire voir dire reveals that the judge’s exercise of discretion was arbitrary and unreasonable with resultant prejudice to the accused. Munson, 115 So.3d at 12. In order to prove an error warranting reversal of both the conviction and sentence on appeal, a defendant must show that he exhausted all of his peremptory challenges and that the *42 trial court erroneously denied a challenge for cause. State v. Mickel, 07-47 (La.App. 5 Cir. 5/29/07), 961 So.2d 516, 522, writ denied, 07-1422 (La.1/7/08), 973 So.2d 732. The defendant must also show that he objected at the time that the trial court refused to sustain a challenge for cause of the prospective juror. State v. Gant, 06-232 (La.App. 5 Cir. 9/26/06), 942 So.2d 1099, 1113-14, writ denied, 06-2529 (La.5/4/07), 956 So.2d 599 (citing State v. Jones, 03-3542 (La.10/19/04), 884 So.2d 582, 589).
|13The record shows that defendant timely objected to the trial court’s denial of his challenge for cause as to Mr. Dyess. Further, as defendant was charged with an offense that was punishable necessarily by imprisonment at hard labor, he was entitled to twelve peremptory challenges. See La.C.Cr.P. art. 799. A review of both the minute entry and the transcript reveals that defendant exhausted all twelve of his peremptory challenges.
Excusal for cause is not warranted, and a trial judge does not abuse his discretion refusing to excuse a prospective juror on the grounds of impartiality, if the prospective juror, who has voiced an opinion seemingly prejudicial to the defense, after rehabilitation demonstrates the ability and willingness to decide the case impartially according to the law and evidence. Gant, 942 So.2d at 1116 citing State v. Bozeman, 03-897 (La.App. 5 Cir. 1/27/04), 866 So.2d 1029, 1032, writ denied, 04-497 (La.7/2/04), 877 So.2d 141. A mere relationship between the prospective juror and a law enforcement officer is not of itself grounds to strike that juror for cause. Gant, supra (citing State v. Kang, 02-2812 (La.10/21/03), 859 So.2d 649, 653); State v. Wideman, 218 La. 860, 51 So.2d 96, 98 (1951). However, a trial judge should grant a challenge for cause, even when a prospective juror declares his or her ability to remain impartial, if the juror’s responses as a whole reveal facts from which bias, prejudice or inability to ■render a judgment according to law may be reasonably implied. Gant, supra (citing State v. Williams, 02-1188 (La.App. 5 Cir. 4/8/03), 846 So.2d 22, 27).
Mr. Dyess stated that knowing the witness, Detective Zanotelli, would not prevent him from being fair and impartial. He further stated that he would judge Detective Zanotelli the same as any other witness and not give him “any extra points.” Mr. Dyess also stated that although his father was employed with the Jefferson Parish Sheriffs Office, it would not affect his ability to be fair in this |14case. He further expressed his belief that his father was not involved in this case and never worked on homicide cases. Nothing indicates that Mr. Dyess was not capable of serving as an impartial juror, and the trial court did not abuse its discretion in denying defendant’s challenge for cause. See State v. Lewis, 611 So.2d 186 (La.App. 5 Cir.1992). We find that defendant’s second counseled assignment of error is without merit.
PRO SE ASSIGNMENTS OF ERROR
Defendant also filed fourteen pro se assignments of error. Because the assignments of error overlap and contain multiple issues, we group them by category instead of by separate assignments of error.

Bias of the Trial Judge

In his pro se assignments of errors numbers one, two, four, five, six, eleven, twelve, thirteen, and fourteen, defendant argues that the trial judge was biased. Defendant contends that the trial judge ignored his rights and made prejudicial remarks during a pre-trial conference and *43 in the presence of prospective jurors.[12] Defendant argues that the judge showed partiality towards the State when ruling on challenges for cause of prospective jurors, and also when ruling on objections regarding defense questions to prospective jurors and to a witness at trial.
Defendant never raised the issue that the trial judge was biased in the trial court, and raises this issue for the first time on appeal. In his pro se supplemental brief, defendant acknowledges that defense counsel never filed a motion to re-cuse in this matter.
To preserve the right to appellate review of an alleged trial court error, a party must state a contemporaneous objection with the occurrence of the alleged 11serror as well as the grounds for the objection. State v. Richoux, 11-1112 (La.App. 5 Cir. 9/11/12), 101 So.3d 483, 490. A primary purpose of the contemporaneous objection rule is to bring an alleged irregularity to the attention of the trial judge and opposing counsel, allowing the trial judge the opportunity to make the proper ruling and correct any claimed prejudice to the defendant. State v. Lyons, 13-564 (La.App. 5 Cir. 1/31/14), 134 So.3d 36, 40. A defendant is limited to the grounds for objection that he articulated in the trial court, and a new basis for the objection may not be raised for the first- time on appeal. State v. Jackson, 450 So.2d 621 (La.1984); State v. Alvarez, 10-925 (La.App. 5 Cir. 6/29/11), 71 So.3d 1079, 1085 (citing La.C.Cr.P. art. 841A); See also State v. Simmons, 13-258 (La.App. 5 Cir. 2/26/14), 136 So.3d 358, 372.
In State v. Nance, 315 So.2d 695 (La.1975), the defendant argued for the first time on appeal that the trial judge did not conduct the trial in an impartial manner. The Louisiana Supreme Court found that although a review of the record showed the opposite, it would not address the issue because the defendant failed to raise his objection orally or include it in a written motion. Nance, 315 So.2d at 700 (citing La.C.Cr.P. art. 841).
Defendant herein did not raise an objection orally or include in a written motion his claim that the trial judge was biased. Therefore, we find that defendant’s claims that the trial judge was biased in his pro se assignments of error numbers one, two, four, five, six, eleven, twelve, thirteen, and fourteen are not properly before this Court on appeal and will not be addressed.

Denial of Defendant’s Pro Se Pre-trial Motions as Untimely

In defendant’s pro se assignment of error number one, he argues that the trial court erred in denying his pro se pretrial motions as untimely and that his motions should have been heard on their merits.
| ^Defendant was arraigned on January 19, 2012. On February 17, 2012, defendant filed pro se motions for discovery and to quash the indictment. On February 25, 2012, defendant also filed pro se motions to suppress inculpatory statement and for a bill of particulars. On February 29, the trial court denied defendant’s pro se pretrial motions as untimely.
Defendant filed pro se pre-trial motions in excess of the 15-day limit for filing of pre-trial motions set by La.C.Cr.P. art. 521. La.C.Cr.P. art. 521 mandates that *44 the trial court allow additional time to file pre-trial motions “upon written motion at any time and a showing of good cause.” State v. Williams, 07-354 (La.App. 5 Cir. 10/30/07), 970 So.2d 1130, 1133, writ denied, 07-2294 (La.5/2/08), 979 So.2d 1282. Defendant’s pro se motions did not request additional time to file, and he has not asserted any reasons that would constitute “good cause” for the late filings.
Further, La.C.Cr.P. art. 703C provides that pretrial motions shall be filed in accordance with La.C.Cr.P. art. 521 unless “neither the defendant nor his counsel was aware of the existence of the evidence or the ground of the motion, or unless the failure to file the motion was otherwise excusable.” Williams, 970 So.2d at 1133. There is no allegation or indication in the record that defendant and defense counsel were unaware of the existence of the evidence or the grounds of the motions, or that defendant’s failure to timely file was otherwise excusable.
Defense counsel filed pre-trial motions, including a request for discovery and bill of particulars, and a motion to suppress statement. At the June 22, 2012 motion hearing, defense counsel stated that “discovery has been tendered,” and defendant’s motion to suppress statement was also heard and denied. Accordingly, the trial court did not abuse its discretion in finding that defendant’s pro se motions were untimely. See Williams, 970 So.2d at 1133; See also, State v. Rose, 97-943 (La.App. 5 Cir. 1/27/98), 708 So.2d 1093, 1095, writ denied. 98-673 (La.8/28/98), 723 So.2d 416.
For the above stated reasons, we find that the defendant’s claim that the trial court erred in denying his pro se pre-trial motions as untimely in his pro se assignment of error number one is without merit.

Denial of Effective Cross-Examination at Suppression Hearing

In defendant’s pro se assignments of error numbers two and three, he argues that the trial court abused its discretion and denied him his right to effectively cross-examine Detective Zanotelli during the suppression hearing. Defendant contends that the trial court erred when defense counsel was not allowed to question Detective Zanotelli regarding the interview techniques used to obtain the statement and identification from Frederick Williams and the length of Mr. Williams interview.
Defense counsel was allowed to question Detective Zanotelli regarding the circumstances of Mr. Williams’ interview. The transcript reflects that the State only objected to defense counsel’s line of questioning regarding the details of the homicide contained in Mr. Williams’ statement. The State correctly argued that those details were not relevant to admissibility in a suppression hearing. The trial court instructed defense counsel to be more specific in his questioning and sustained the State’s objection.
Defense counsel did not object to the court’s ruling and continued to question Detective Zanotelli regarding the circumstances of Mr. Williams’ interview. Defense counsel never attempted to question Detective Zanotelli regarding the length of Mr. Williams’ interview. A defendant cannot avail himself of an alleged error unless he made a contemporaneous objection at the time of the error. La.C.Cr.P. art. 841A; See also, State v. Seals, 95-305 (La.11/25/96), 684 So.2d 368, 373, cert. denied, 520 U.S: 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997).
Based on these circumstances, we find that defense counsel acquiesced to the trial court’s ruling. See State v. Norwood, 99-136 (La.App. 5 Cir. 8/31/99), 742 So.2d 993, 996. Defendant failed to object or make a *45 proffer, and thus, defendant failed to properly preserve this issue for appeal.
Considering the foregoing, we find that defendant’s claims that the trial court denied his right to effective cross-examination during the suppression hearing in his pro se assignment of errors numbers two and three are without merit.

Challenges for Cause and Qualifíca-tions of Prospective Jurors

In defendant’s pro se assignments of error numbers four, five, and six, he argues that the trial court erred in its ruling on challenges for cause or qualifications of prospective jurors. Defendant argues that the trial court erred in denying defendant’s challenge for cause of prospective jurors, Jennifer Holley and Robert Porter. Defendant also argues that the trial court erred in granting the State’s challenge for cause of prospective juror, Wandalyn Julian. Defendant further asserts that the trial court erred in accepting an unqualified juror, Ricardo Pereira.
The record reflects that the trial court in fact granted the defense’s challenges for cause of Ms. Holley and Mr. Porter and excused both prospective jurors. Therefore, defendant’s claim that the trial judge erred in denying defendant’s challenges for cause of these prospective jurors is meritless.
After the prosecutor’s statement to the prospective jurors regarding circumstantial evidence, Ms. Julian requested to be dismissed as a prospective juror. After a conference, Ms. Julian indicated that she would not consider only [^circumstantial evidence as a basis for a conviction. The State challenged Ms. Julian for cause, which the trial court granted. Defense counsel objected.
Ms. Julian’s statement that she would not consider only circumstantial evidence as a basis for a conviction is one of the specific challenges for cause provided in La.C.Cr.P. art. 798.
La.C.Cr.P. art. 798 provides, in pertinent part, that:
It is good cause for challenge on the part of the state, but not on the part of the defendant, that:
⅜ * ⅜
(3) The juror would not convict upon circumstantial evidence.
In State v. Monk, 315 So.2d 727, 739 (La.1975), the Louisiana Supreme Court upheld the trial court’s sustaining of the State’s challenge for cause of a prospective juror who stated that he would not convict on circumstantial evidence. Therefore, we find that the trial court ruled correctly in granting the State’s challenge for cause of prospective juror, Ms. Julian, and that this assignment is without merit.
During voir dire, prospective juror, Ricardo Pereira, stated that he has lived and worked in the United States for the past ten years. Mr. Pereira stated that he was employed as a supervisor at a large janitorial services company. Mr. Pereira explained that he did not have formal language classes or instructions and that he learned English from his employment. Mr. Pereira also stated that he had taken the driver’s license test and obtained a driver’s license. Although Mr. Pereira stated that he was “a little bit short in his English,” could not understand everything about the law, and was confused when the lawyer stated “too many things,” he also stated that he could read, write, and understand the English language. After both the State and defense counsel stated that Mr. Pereira was acceptable, the trial court Unaccepted Mr. Pereira as a juror in this case. Defense counsel did not challenge Mr. Pereira for cause.
*46 In order to serve as a juror, a person must be able to read, write, and speak the English language and be possessed of sufficient knowledge of the English language. State v. Mitchell 08-136 (La.App. 5 Cir. 1/13/09), 7 So.3d 720, 734 (citing La.C.Cr.P. art. 401A(3)). The question of a juror’s qualifications is addressed to the sound discretion of the trial judge within the bounds prescribed by law. Although the trial judge’s ruling in these matters is subject to review, it will not be disturbed in the absence of clear abuse. Mitchell, supra (citing State v. Scott, 278 So.2d 121 (La.1973)).
The trial court did not abuse its discretion in finding Mr. Pereira was qualified to serve as a juror. In response to questioning, Mr. Pereira responded that he could read, write, and understand the English language. The trial judge, who observed and heard Mr. Pereira, was in the best position to determine whether or not he was capable of serving on a jury. Accordingly, the trial court did not err in accepting Mr. Pereira as a juror in this case.
For above stated reasons, we find that defendant’s claims that the trial court erred in his rulings on challenges for cause on prospective jurors, Ms. Holley, Mr. Porter, and Ms. Julian, and accepting Mr. Pereira as a juror, in his pro se assignments of error numbers four, five, and six are without merit.

Prosecutor’s Remarks During Voir Dire

In defendant’s pro se assignments of error numbers nine, ten, twelve, and thirteen, he argues that the prosecutor made prejudicial remarks during voir dire. Defendant argues that during voir dire, the prosecutor hypothesized as to the whereabouts of the murder weapon in violation of La.C.Cr.P. art. 770. Defendant further argues that he was deprived of his constitutional right to a fair and impartially trial when the prosecutor quoted the law during his opening statement in voir dire and confused the prospective jurors regarding the case and the law concerning justifiable homicide.
A review of the transcript reveals that defense counsel did not object to the State’s discussion concerning a missing murder weapon with the prospective jurors. Accordingly, we find that defendant waived this issue for review on appeal. La.C.Cr.P. art. 841; State v. Hoffman, 98-3118 (La.4/11/00), 768 So.2d 542, 582, cert. denied, 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (2000).
Defendant also argues that the prosecutor misstated the law and confused the prospective jurors when the he stated that “one claiming self-defense must not be able to retreat as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was necessary to prevent a violent or forceful felony involving life or great bodily harm.” Defendant further contends that the prosecutor also erred when he described the aggressor doctrine as “a person who is the aggressor cannot claim self-defense unless he withdraws from the conflict in good faith and in such manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.”
The record reflects, and defendant admits in his pro se supplemental brief, that defense counsel did not object to the prosecutor’s statements of the law. Accordingly, we find that defendant waived this issue for review on appeal. La.C.Cr.P. art. 841; See also Hoffman, 768 So.2d at 582.
Additionally, defendant argues that the prosecutor made prejudicial remarks when making and arguing objections during voir dire. The transcript reflects that the remarks that defendant complains about oc *47 curred during a bench conference, sotto voce, and not within the hearing of prospective jurors. Thus, this argument is without merit.
| ¡^Considering the foregoing, we find that defendant’s claims concerning the prosecutor’s remarks during voir dire in his pro se assignments of error numbers nine, ten, twelve, and thirteen are without merit.

Restriction of Defense Counsel’s Jury Voir Dire Examination

In defendant’s pro se assignments of error numbers eleven, twelve, and thirteen, he argues that the trial judge restricted defense counsel’s examination of prospective jurors regarding justifiable homicide and the consideration of retreat. Defendant also contends that the judge “contested” when defense counsel continued his explanation of justification to the prospective jurors and used the projector to present law regarding justifiable homicide and the consideration of retreat.
A defendant must be given wide latitude in examining prospective jurors in order to secure information for the intelligent exercise of peremptory challenge or challenges for cause. See State v. Simmons, 422 So.2d 138, 144 (La.1982).
From a review of the entire voir dire, we find that defense counsel was not unreasonably restricted in the questioning of the prospective jurors. The record reflects that even after the trial judge cautioned defense counsel on his questioning, and following the State’s objections, defense counsel was allowed to further discuss the areas of justification and the consideration of retreat and was not restricted. We find it significant that five prospective jurors,[13] who defense counsel questioned regarding justification and the consideration of retreat, were challenged by the defense, and the trial judge granted these challenges and excused them for cause. In addition, defense counsel did not object to any cautioning by the trial court nor did he object to any objections by the State. An error cannot be | purged for the first time on appeal. Simmons, 422 So.2d at 144 (citing La.C.Cr.P. art. 841).
For the above stated reasons, we find that defendant’s claim that the trial judge restricted defense counsel’s voir dire examination in his pro se assignments of error eleven, twelve, and thirteen to be without merit.

Ineffective Assistance of Counsel

In defendant’s pro se assignments of error numbers one, three, six, seven, eight, nine, ten, twelve, and thirteen, he argues that defense counsel rendered ineffective assistance of counsel. Defendant argues that defense counsel: 1) failed to object to the trial court’s sustaining of the objection during Detective Zanotelli’s cross-examination; 2) failed to file a motion to recuse the trial judge for his prejudicial remarks; 3) failed to question prospective juror, Ricardo Pereira, regarding his inability to understand English; 4) refused to question prospective jurors regarding their prejudices toward defendant’s case and challenge for cause; 5) withdrew defendant’s motions; 6) failed to investigate and re-urge defendant’s motion to quash the grand jury indictment; 7) failed to investigate the individual who provided the surveillance video and the witnesses who provided statements and identifications; 8) failed to contest the State’s misstatement of the law regarding justifiable homicide; 9) failed to object and request the jury voir dire to be dismissed based on the *48 judge’s prejudicial remarks; and 10) failed to object to the trial judge’s restriction of the defense’s jury voir dire examination regarding justifiable homicide and the consideration of retreat.
Under the Sixth Amendment to the United States Constitution and Article 1, § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. State v. McDonald, 04-550 (La.App. 5 Cir. 11/16/04), 889 So.2d 1039, 1042, writ denied, 04-3088 (La.4/1/05), 897 So.2d 599. A claim of ineffective | ¡^assistance of counsel must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). State v. Ott, 12-111 (La.App. 5 Cir. 10/16/12), 102 So.3d 944, 953; State v. Dabney, 05-53 (La.App. 5 Cir. 6/28/05), 908 So.2d 60, 63.
Under the Strickland test, the defendant must show: (1) that counsel’s performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense. State v. Dabney, 908 So.2d at 63 (citing Strickland, 466 U.S. at 687, 104 S.Ct. at 2064). This requires showing that counsel’s errors were so serious as to deprive the defendant of a trial whose result is reliable. Id. The defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
A court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance. State v. Ott, 12-111 (La.App. 5 Cir. 10/16/12), 102 So.3d 944, 953. Therefore, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.” State v. Dabney, supra (citing Strickland, supra). There is no precise definition of reasonably effective assistance of counsel. State v. Ott, 102 So.3d at 953. Accordingly, any inquiry into the effectiveness of counsel must be specific to the facts of the case, and must take into consideration the counsel’s perspective at the time. Id. The Sixth Amendment does not guarantee er-rorless counsel or counsel judged ineffective by hindsight. State v. LaCaze, 99-0584 (La.1/25/02), 824 So.2d 1063, 1078-79, cert. denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002).
| as A claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief filed in the trial court, where a full evidentiary hearing can be conducted, rather than on direct appeal. State v. Washington, 03-1135 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 983. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Deruise, 98-0541 (La.4/3/01), 802 So.2d 1224, 1248, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001). We find that the record contains sufficient evidence to rule on the merits of defendant’s claim.
In his pro se assignment of error number eight, defendant argues that defense counsel failed to investigate the trustworthiness of the State’s case, including that counsel failed to investigate the individual who provided the surveillance video to Detective Zanotelli, and the witnesses who provided statements and identifications. Defendant’s contentions are conclusory and lack specificity. Defendant *49 has not demonstrated that but for counsel’s alleged unprofessional conduct, the outcome of the trial would have been different. See State v. Seals, 09-1089 (La.App. 5 Cir. 12/29/11), 83 So.3d 285, 328-29, writ denied, 12-293 (La.10/26/12), 99 So.3d 53, cert. denied, — U.S. -, 133 S.Ct. 2796, 186 L.Ed.2d 863 (2013).
In his pro se assignment of error number one, defendant argues that defense counsel failed to file a motion to recuse the trial judge for his prejudicial remarks. In his pro se assignment of error number eight, defendant argues that counsel -withdrew his pre-trial motions, including his pro se motions, and also, failed to re-urge defendant’s motion to quash the grand jury indictment on the ground of failure to have a representative cross-section of the community.
| gf;For purposes of an ineffective assistance of counsel claim, the filing of pre-trial motions is squarely within the ambit of the attorney’s trial strategy. State v. Jones, 09-688 (La.App. 5 Cir. 2/9/10), 33 So.3d 306, 325 (citing State v. Hollins, 99-278 (La.App. 5 Cir. 8/31/99), 742 So.2d 671, 681, writ denied, 99-2853 (La.1/5/01), 778 So.2d 587). Defense counsel’s decisions as to which motions to file, or in this case, to pursue,- form a part of trial strategy. Hoffman, 768 So.2d at 577. Hindsight is not the proper perspective for judging the competence of counsel’s trial decisions and an attorney’s level of representation may not be determined by whether a particular strategy is successful. Jones, 33 So.3d at 325; See also, Strickland, 466 U.S. at 689, 104 S.Ct. at 2065.
Defendant has offered no showing as to the possible merit of a motion to recuse the trial judge. Also, the alleged prejudicial remarks occurred during a bench conference and not within the hearing of the prospective jurors, which is contrary to defendant’s assertions. Defendant has therefore failed to show that his trial counsel was deficient in failing to seek recusal of the trial judge or that he was prejudiced in any way by counsel’s failure to file a motion to recuse. See Jones, 33 So.3d at 325-26; State v. Kenner, 336 So.2d 824 (La.1976).
Defendant also failed to show that counsel was deficient in the withdrawal of defendant’s pre-trial motions, except the motions to suppress identification and statement, or that he was prejudiced in any way. In addition, defendant failed to demonstrate that defense counsel’s decision to withdraw the other pre-trial motions was not trial strategy.
Further, even if the indictment had been quashed on defense counsel’s motion, defendant has not shown or suggested why he would not have been re-indicted by a properly-constituted grand jury. This claim is without merit because success on a motion to quash does not prevent the State from reinstituting charges 127against defendant before a properly selected grand jury. Competent defense counsel may reasonably decide to conserve his resources and avoid unnecessary animosity and attention of the prosecutor by concentrating on issues bearing directly on the question of guilt or innocence. See State v. Crandell, 05-1060 (La.3/10/06), 924 So.2d 122, 132 n. 4; See also, State v. Washington, 05-35 (La.App. 4 Cir. 4/6/05), 900 So.2d 1072, 1080, writ denied, 05-1050 (La.6/24/05), 904 So.2d 722; State v. Woodberry, 02-994 (La.App. 4 Cir. 6/5/02), 820 So.2d 638, 643, writ denied, 02-1856 (La.3/21/03), 840 So.2d 544.
In his pro se assignment of error number six, defendant argues that defense counsel failed to question prospective juror, Ricardo Pereira, regarding his inability to understand English. In his pro se *50 assignment of error number seven, defendant argues that counsel refused to question prospective jurors regarding their prejudices toward defendant’s case and failed to challenge for cause. In his pro se assignments of error numbers nine and ten, defendant argues that counsel failed to contest the State’s misstatement of the law regarding justifiable homicide. In his pro se assignment of error number twelve, defendant argues that counsel failed to object and request the jury voir dire to be dismissed based on the judge’s prejudicial remarks. In his pro se assignment of error number thirteen, defendant argues that counsel failed to object to the trial judge’s restriction of his jury voir dire examination regarding justifiable homicide and the consideration of retreat.
Although defendant asserts that defense counsel failed to question prospective juror, Mr. Pereira, the record reflects that counsel did question Mr. Pereira regarding whether he had any formal language training. The trial judge and the State also adequately questioned Mr. Pereira regarding his understanding of the English language. Accordingly, defense counsel had no reason to challenge Mr. Pereira for cause. See Hoffman, 768 So.2d at 577-78.
^^Defendant’s contentions that counsel failed to question prospective jurors regarding their prejudices and challenge them for cause are conclusory. Defendant fails to specify which jurors should have been challenged for cause. Defense counsel effectively questioned prospective jurors, and a review of the record reveals that counsel successfully challenged several prospective jurors for cause. Defendant failed to show that counsel had any reason to challenge additional prospective jurors for cause.
Defendant also claims that defense counsel failed to object to the State’s misstatement of the law regarding justifiable homicide, failed to object and request the jury venire to be dismissed based on the trial judge’s prejudicial remarks, and failed to object to the judge’s restriction of the defense’s voir dire examination regarding justifiable homicide and the consideration of retreat. The time and manner of making objections is part of the trial strategy decision-making of the trial attorney. Hoffman, 768 So.2d at 578. The record reveals that the trial judge properly instructed the jury regarding justifiable homicide. Also, the transcript reflects that the alleged prejudicial remarks made by the trial judge occurred during a bench conference and not within the hearing of prospective jurors. Additionally, the record further reflects that defense counsel was allowed to continue his discussion and questioning of prospective jurors regarding justifiable homicide and the consideration of retreat even after trial judge cautioned him and after the State’s objections. Under these circumstances, we find that counsel did not commit professional error. Defendant failed to show that counsel acted unprofessionally by failing to request that the jury venire be dismissed. See Hoffman, 768 So.2d at 578.
In his pro se assignment of error number three, defendant argues that defense counsel failed to object to the trial court’s sustaining of the objection | ¡^during cross-examination of Detective Zanotelli at the suppression hearing. Defendant asserts that the sustained objection disallowed defense counsel from questioning Detective Zanotelli regarding interview methods and techniques utilized to retrieve statements and identification. However, as previously discussed, a review of the record reveals that defense counsel was allowed to effectively cross-examine Detective Zanotelli regarding the methods and techniques utilized in interviewing Mr. Williams who provided a statement and identification.
*51 A defense attorney’s examination of witnesses falls within the ambit of trial strategy for the purposes of evaluating an ineffectiveness claim. State v. Williams, 98-1146 (La.App. 5 Cir. 6/1/99), 738 So.2d 640, 652, writ denied. 99-1984 (La.1/7/00), 752 So.2d 176 (citing State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1079, writs denied, 94-475 (La.4/4/94), 637 So.2d 450 and 94-1361 (La.11/4/94), 644 So.2d 1055). Also, the time and manner of making objections are part of the trial strategy decision-making of the trial attorney. Hoffman, 768 So.2d at 578; see also, Simms, 465 So.2d at 778. The record does not support defendant’s claim that defense counsel was deficient in failing to object during the defense’s cross-examination of Detective Zanotelli. A reading of the record indicates that defendant was competently represented in this case.
Considering the above stated reasons, we find that defendant’s claims of ineffective assistance of counsel in his pro se assignments of errors numbers one, three, six, seven, eight, nine, ten, twelve and thirteen are without merit.
TERRORS PATENT DISCUSSION[14]
The record was reviewed for errors patent, according to the mandates of La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following requires corrective action.
Defendant was originally sentenced on June 24, 2013 and was resentenced on April 14, 2014. The Uniform Commitment Order reflects the original sentencing date instead of the date defendant was resen-tenced. Therefore, we remand this matter for correction of the Uniform Commitment Order regarding the resentencing date. The Clerk of Court is ordered to transmit the original of the corrected uniform commitment order to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections’ legal department. State v. Lyons, 13-564 (La.App. 5 Cir. 1/31/14), 134 So.3d 36 (citing State ex rel. Roland v. State, 06-224 (La.9/15/06), 937 So.2d 846 (per curiam )); See also, La.C.Cr.P. art. 892B(2). We further order that, in addition to the record copy, a separate copy of this opinion be delivered to the Clerk of Court of the Twenty-Fourth Judicial District Court for the Parish of Jefferson.
CONCLUSION
For the reasons stated above, defendant’s convictions and sentences are affirmed and this matter is remanded for correction of commitment.

CONVICTIONS AND SENTENCES AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT.

. Defendant was originally sentenced on June 24, 2013. Defendant was sentenced on count one, second degree murder, to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, and seven years and six months imprisonment at hard labor on count two, attempted possession of a firearm by a convicted felon. The trial court ordered the sentences to run concurrently with one another and consecutively with any other sentence defendant was serving at the time of sentencing. Defendant was ordered to pay a fine of $500.00 on count two and all court costs. Defendant appealed his convictions and sentences. This Court found that the trial court was without jurisdiction to impose defendant's sentences because it granted defendant's motion for appeal before there was a final judgment. State v. Griffin, 13-701 (La.App. 5 Cir. 3/12/14), 138 So.3d 90, 91-92. This Court vacated defendant's sentences and remanded this matter to the trial court to rule on defendant’s post-trial motions and ordered the trial court to resentence defendant, if it denied defendant’s post-trial motions. Id. The trial court denied defendant’s motions for new trial and post-verdict judgment of acquittal. After waiving delays, defendant was resentenced on April 14, 2014. This second appeal followed.

. A surveillance video was recovered from the Kingfish Lounge which showed the murder of Mr. Crayton.

. Mr. Williams referred to the person who walked up as "Jigger,” who Mr. Williams identified in court as defendant.

. Tiffany Noel was Mr. Crayton’s girlfriend. Ms. Noel died prior to trial.

. When the issues on appeal relate to both sufficiency of the evidence and one or more *37 trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992).

. We note that defendant argued at trial that self-defense also applied to his charge of possession of a firearm by a convicted felon. The trial court granted defendant’s motion for a special jury instruction explaining the use of self-defense in connection to the charge of possession of a firearm by a convicted felon. Defendant did not raise this issue on appeal and thus, self-defense as it applies to defendant’s charge of possession of a firearm by a convicted felon is not properly before this Court.

. Tiffany Frey was' the girlfriend of Mr. Williams. Prior to trial, Ms. Frey was the victim of an unrelated homicide.

. On July 8, 2014, a letter was sent to the Attorney General notifying him of the constitutional issue raised in the present case.

. We note that the State and the defense stipulated to defendant’s prior convictions in Orleans Parish for second offense possession of marijuana and possession of cocaine. Defendant also testified that he had two prior convictions from Orleans Parish.

. "The effective date of a constitutional provision or amendment is determined in accordance with the provisions of article XIII, section 1(C) of the Louisiana Constitution. Article XIII, section 1(C) provides in part: ‘If a majority of the electors voting on the proposed amendment approve it, the governor shall proclaim its adoption, and it shall become part of this constitution, effective twenty days after the proclamation.... ’ The governor proclaimed the adoption of the amendment by Act 874 on November 19, 2012. See La. Const, art. I, § 11, 'Historical Notes.' The twentieth day thereafter, and the effective date of this constitutional amendment is therefore December 10, 2012.” Draughter, 130 So.3d at 862.

. In defendant's formal statement, Detective Zanotelli asked defendant, "And you’re on parole or probation right?” Defendant replied, "Yes.”

. This Court notes that the judge’s remarks which defendant complains about occurred during a bench conference "sotto voce,” which indicates that the remarks were made in a quiet voice as to not be overheard by the prospective jurors contrary to defendant's assertion.

. The five prospective jurors thus questioned and removed for cause were Michael Villarru-bia, Susan Caire, Rhonda Anchissi, Katharine Nieto, and Ms. Holley.

. We note that this is defendant's second appeal. Generally, a defendant is not entitled to a second errors patent review of his underlying conviction and sentence. See State v. Taylor, 01-452 (La.App. 5 Cir. 11/14/01), 802 So.2d 779, 783-84, writ denied, 01-3326 (La.1/10/03), 834 So.2d 426; State v. Alberto, 95-540 (La.App. 5 Cir. 11/28/95), 665 So.2d 614, 625, writs denied, 95-1677 (La.3/22/96), 669 So.2d 1222 and 96-0041 (La.3/29/96), 670 So.2d 1237. However, defendant did not receive an errors patent review on his original appeal to this Court because the merits of the appeal were pretermitted. See Griffin, 138 So.3d at 90.